E. G. SEVIER v. PETER TEAL.

The proceedings of the Probate Court not done at the county seat, are not void on that account, if, by reason of an incursion of the public enemy, it was impossible to hold Court at the county seat.

It would seem that where the obtaining of letters of administration is part of a fraudulent scheme to divert the property of an estate from its proper destination, suit may be commenced by the real parties in interest in the District Court, to arrest the administration and recover the property.

Where the suit went off on a plea in abatement in the Court below, and, on appeal, both parties asked an opinion on the merits ; there being no error, the Court said it would not be proper, if competent, to comply with the request.

Appeal from Victoria. Tried before J. J. Holt, Esq., appointed by the parties.

*A. S. Cunningham*, for appellant.

*Phillips & Phillips*, for appellee.

HEMPHILL, CH. J. The question in this case is, Was there error in sustaining the plea in abatement?

This depends on the force of the letters of administration, to the defendant Teal; for, if valid, there was no error in sustaining the plea, and declaring the letters of administration, to the plaintiff Sevier—being subsequent in point of time—to be void.

The first and principal objection to Teal's letters, is, that although purporting to be issued in Refugio county, and by the Probate Court thereof, yet they were not in fact issued at the court house, at the Mission of Refugio, but at Carlos' Ranch ; or, perhaps, even in another county, viz : the county of Victoria.

This objection does not appear from the face of the probate proceedings ; but from the deposition of the Chief Justice, by whom the letters were granted, it is clear that they were not issued at the Mission ; and it was satisfactorily proven that the grant was not in the county of Victoria, but at the rancho of Don Carlos. It is insisted for the plaintiff, that the court house of the county was at the Mission of Refugio, and that a grant of administration elsewhere, though within the county, was void.

It will not admit of question, that by law, Courts of Probate were required to be holden at the court houses of the respective counties.  This appears from the various provisions on the subject of opening and holding Courts, and especially the 25th Section of the Act organizing Inferior Courts.  (Laws of Republic, Vol. 1, p. 153.  See also law of Consultation, p. 136, Sec. 4 ; and laws of the Republic, Vol. 2, p. 111, Sec. 2.) But it is contended that the Mission was never established by law, as the county seat of Refugio ; and it does not appear that there is any express provision of law fixing the county seat of that county.  But it is, on the other hand, insisted, that the Mission became the county seat, from the fact that it was established as the principal town of Power & Hewitson's Colony in 1834, and that the Ayuntamiento held their sessions there, up to the war of the revolution.  These are very strong facts in support of the position that the Mission was the legal seat of justice of the county ; but are they conclusive ?  If, for instance, the Courts had never been held at the Mission, but at some point on Aransas Bay, or at Carlos' Ranch, would their acts and proceedings have been void, on the ground that the sessions were not at the place required by law ?  This would be a harsh construction, in the absence of a specific provision fixing the Mission as the place for holding the Courts. I have no doubt that the Mission was properly the seat of justice of the county.  But this does not appear to have been always so understood by the officers of the county.  By the Act

of Dec. 21st, 1837, p. 111, Clerks of the County and District Courts were required to keep the papers pertaining to their offices at the county seats, and, on failure, were subject to the forfeiture of twenty dollars for each day of failure. From the evidence of Mr. Neal, who was Chief Justice at the grant of the letters to Teal, it appears that his predecessor held his office at Carlos' Ranch; that when Neal was appointed Chief Justice, he was residing at the city of Aransas; that the offices of the District Clerk, of the Sheriff and of the Surveyor, were then kept at that place; that Neal, concluding it would be more convenient to the citizens of the county, that the Courts should be holden at the Mission of Refugio, moved his office up there, and the other officers of the county followed; that he remained at Refugio until the spring of 1842, when he was forced, by the invasion of the Mexicans, to remove the archives to Carlos' Ranch; that he had never seen any law designating the county seat of Refugio county. From this evidence, it appears that the offices were kept for some time at Aransas before removal to Refugio. Could it be seriously urged, that, under the circumstances, acts done by these officers were invalid, because not done at the county seat? that a deed recorded there was no notice to a subsequent purchaser? There would be great difficulty, I apprehend, in sustaining any such propositions.

But, admitting that in contemplation of law, the Mission was the county seat, it is believed, that, at the date of the grant to Teal, the emergencies of the times were such as to justify the Chief Justice in holding his Court elsewhere. They were such as to render it impossible that it should be held at the Mission. That was depopulated by the incursions of the Mexicans. The place was captured by a marauding force in 1841, and some of the officers of the Court and inhabitants were taken and carried off as prisoners. Under pressure of the incursions in 1842, the Mission was abandoned, and the inhabitants driven off (as said by a witness) to the San Antonio

river. At the date of the grant, immediately after the irrup-
tion under General Woll, the whole country, west of the Gua-
daloupe, as stated by Mr. Neal, was in confusion, most of the
people moving eastward. There were but two alternatives,
either to close the Courts altogether, or to hold them at
Carlos' Ranch, the principal settlement in the county, and to
which, or its neighborhood, most of the inhabitants had re-
treated.

It cannot be admitted, that, because a county seat has been
captured or rendered uninhabitable, the administration of the
laws should cease within the limits of that county. It does
not follow, that, because the county town has been abandoned
or become inaccessible, the county, though it be not de-
populated, should lapse into disorganization. This would be
an act of immolation, repugnant to every principle of sound
policy, and not required by any fair construction of the law.—
The injunction to hold the Courts at the county seats has ref-
erence only to the ordinary circumstances in times of peace,
and cannot be construed to prohibit the holding of Courts, al-
together, in times of war, for the mere reason that under pres-
sure of hostilities, it has become impossible or unsafe to hold
them at the county seats.

We are of opinion, under the circumstances, as detailed in
the evidence, that the grant of administration to Peter Teal is
not void or impaired by the fact that the letters were issued
at the Rancho of Don Carlos, and not at the Mission of
Refugio.

Nor are they void on the ground of fraud. The domicil of
the deceased was in the County of Refugio, and the mere fact
of taking administration cannot be a fraud. Upon his acts as
administrator, and whether they be such as to justify a revo-
cation of his letters, it is not necessary to express any opinion.
They are not, at all events, of a character to justify the impu-
tation, that his object, in administering, was originally fraudu-
lent, and that consequently the grant to him was, in its incep-

ception, vicious and null.  This conclusion, as to the validity of the letters to Teal, accords with the decision of the Court below; and there was no error in sustaining the plea in abatement.

We have now reached the end of this appeal, without touching, or having the power to decide the important matters in controversy between these parties.  The plaintiff, or rather his wife, and the defendant, are the only claimants of the estate of the deceased, and whether one or the other of them should administer, is a matter of but little consequence, and can have no further interest, except as it may affect the question of costs.

This suit was instituted by the plaintiff, as the administrator of the deceased Sideck, under a grant of letters from the Probate Court of Victoria, against the defendant as a trespasser.  The defendant pleaded in abatement, setting up the prior grant of administration to himself.  This was in 1847.  In 1850 and in 1852, the plaintiff amended his petition, by setting forth the fact that his wife was the sole heir of the deceased ; that the letters to Teal were void and fraudulently obtained ; and prays that they may be revoked and annulled.  The defendant objected to this, as introducing a new party and a new right, but amended his answer, claimed by adoption as the son of the deceased, and by donation.

There can be no doubt of the right of the parties to change the character of the suit, and there being comparatively no debts, to abandon the question of administration, and claim in their respective capacities as heirs, or donees ; and this they partly attempted to do, though the amendment of the plaintiff looks rather to the defeat of the grant of administration to the defendant, than to the recovery of the land as heir.  The amended answer of the defendant sets up more distinctly his individual right to the property, and though not perhaps so intended, it might have become the basis on which the issue as to the claims of the parties might have been tried

and determined. There were also other suits between the same parties. In the progress of the trial, a vast amount of evidence was offered, some of it from depositions taken in other causes, as to the fact of heirship by the wife of the plaintiff, and of adoption and donation to the defendant. But notwithstanding the introduction of this evidence, and the issues thus made or attempted to be made, yet none of these were considered or decided by the Court. The case did not progress to the point at which they could be considered. It was arrested on the preliminary question of the validity of the grant of administration to Teal, and this not being waived, and being decided for defendant, the action was defeated, and the issues upon what might be styled, comparatively, the merits, were effectually precluded from the consideration and action of the Court. Under such circumstances, it would not be proper, if competent, for this Court to hear and adjudge the issues which were not and could not have been decided below. This is to be regretted, but it is the misfortune of the parties, which this Court has no power to obviate.

To the questions which have been argued in this cause, much and earnest consideration has been given, with a view to a decision, as requested by both parties. But this, on further reflection and for the reasons above stated, we must decline, and conclude with affirming the judgment of the District Court.

Judgment affirmed.