[No. 2330.]

J. M. WATTS v. THE STATE.

1. COUNTY SEAT OF PRESIDIO COUNTY.—To this prosecution, which was being had at the town of Marfa, the appellant set up by special plea that Fort Davis, and not Marfa, was the county site, *de jure*, of Presidio county, and that although the town of Marfa was clothed with all the indicia of the county site, and was, as shown by the facts set up in said plea, the *de facto* county site, still the court had no authority to sit and try causes at Marfa, the said Marfa being merely the *de facto* and not the *de jure* county site of Presidio county. *Held*, that the trial court properly overruled and struck out the special plea, and excluded evidence in support of it, in as much as the jurisdiction of the court was amply supported by the *de facto* character of Marfa as the county site. The authority of the court to try the case at the *de facto* county site can not be assailed in a collateral proceeding; nor is the validity of a judgment rendered by the court holding its session at the *de facto* county site affected by a subsequent adjudication by competent jurisdiction in a direct proceeding in favor of another point as the *de jure* county seat. See the opinion *in extenso* on the question.

2. PRACTICE.—Neither the validity of the indictment, nor of the proceedings on the trial, is affected by the discharge by the grand jury of one of their number before the presentment of the indictment. The power to discharge one of its members is not vested in the grand jury, wherefore such a discharge is a nullity and is absolutely void. Moreover, nine members of the grand jury constitute a quorum of that body for the transaction of business.

3. DISORDERLY HOUSE—FACT CASE.—See the statement of the case for evidence *held* sufficient to support a conviction for keeping a disorderly house.

APPEAL from the District Court of Presidio. Tried below before the Hon. W. H. Slaughter.

The conviction in this case was for keeping a disorderly house, and the penalty imposed by the verdict was a fine of two hundred dollars.

It was incontestibly proved, on the part of the State, that the defendant was the proprietor of a saloon situated in the town of Fort Davis, Texas, and that a dance hall and certain attached buildings and an unattached building, occupied by notorious prostitutes, were under his proprietorship, he receiving money from the said prostitutes in payment of rent for the rooms in the said buildings so occupied by them.

The motion for new trial raised the questions discussed in the opinion.

*A. D. V. Old,* for the appellant: Section 19, Article 1 of the Constitution guarantees unto every citizen of this State a trial by due course of the law of the land, before he can be deprived of life, liberty or property. Under this clause he has the right to avail himself of everything the law has placed in his grasp, and require that everything the law has provided to be done, necessary for his trial and conviction, to be fulfilled, before he can be legally convicted. The law provides that all terms of the county court shall be held at the county seat of the county (Rev. Stat., Art. 704), and the law leaves the providing of a court house entirely with the commissioners' court of the county. It does not delegate this power to any other tribunal. (Art. 705, Rev. Stat.) In the case of Adams v. The State (Vol. 5, No. 41, Texas Law Review), the court say: "Under the law the trial must be had at the court house, at the county seat of the county. It was there, and there only, that the cause must be heard and determined." Now, what did the court mean by the term "court house and county seat"? It certainly meant the place selected by the means and in the manner provided by law, and a house provided by the party delegated by law to perform this duty, and nothing more.

Defendant alleged facts, in his objection presented to the court, as a reason why he should not be put on trial in the town of Marfa, which, if true, should have and would have been sustained by the law. The court, in its "wisdom," denied him this right, and forced him to trial at another and different place than that provided by law, if the facts alleged by defendant are true, and he swears they are true, and in support of his oath the court approved a bill of exceptions embodying the defendant's objection, without any explanation.

If the facts, or any of them, alleged by defendant, were not true, why did not the court explain this when he signed the defendant's bill of exceptions? This certainly was an inherent right the defendant had, and the defendant could not legally be deprived of the right to interpose it, notwithstanding our statute makes no provision for such a plea. This principle was enunciated by Judge Hurt in the case of Blandford v. The State, 10 Texas Court of Appeals, 627. There is only one mode of removing a county seat, and that is by the vote of the electors. (See

Art. 2, sec. 9, Constitution of 1876, and the laws of the Sixteenth Legislature, chap. 76, secs. 1, 2, 4, 5 and 6, p. 84.)

If defendant's allegations are true, which he was anxious to prove, but was denied this right, Marfa was not elected the county seat of Presidio county at the election held on the fourteenth of July, 1885. Marfa at said election received three hundred and ninety-one votes, a majority of eighty-nine votes over Fort Davis. The defendant alleged that Marfa was not within five miles of the geographical center of Presidio county, and he was so careful he armed himself with the certificate of the Commissioner of the General Land Office and the certificate of the county surveyor designating the center of said county and the location of the town of Marfa. This is the means provided by law for proving the center of said county. Now, if Marfa received at said election only three hundred and ninety-one votes and Fort Davis three hundred and two votes, and Marfa is not within the prescribed limits, this certainly would not establish Marfa the county seat of said county; and as the removal is made to depend on the vote of the "electors," the returning officer could not help it out by an order. He is a special agent, delegated by the political power of the State to perform a special and limited trust, "count the vote and declare the result" as made by the vote of the "electors," nothing more; and when this authority is exceeded his acts are null and void. (Houston Tap and B. R. R. Co. v. Randolph, 24 Texas, 317.)

Had the law intended that the removal of county seats was to depend on the order of the returning officer, why should it provide for an election? Undoubtedly, he has the power to determine whether or not the returns are made in accordance with law, reject or count them, as in his judgment is proper, and his action on this is final; but when he accepts them and counts them, and declares the result of the vote, then his authority ceases, and the "law" fixes the county seat from said vote, with the aid of the certificate of the Commissioner of the General Land Office designating the center of said county. (See Laws Sixteenth Leg., chap. 76, sec. 5, p. 85.) And when he does more, his acts are void. It is now settled in this State that no court has jurisdiction to contest an election; but this is not an attempt to attack an election, but to maintain the election as made by the vote of the electors. While it is true our courts hold that no citizen has such an interest in the location of a county seat that he can maintain a suit to prevent the removal

of same, we take it that it is equally as true that a defendant in his own trial for a criminal offense can demand a trial according to due process of law, and a trial at any other place than the legally established county seat, and in a court house provided by the commissioners' court of the county, would in law be no trial at all; the judgment rendered would be void, and afford the defendant no protection on a charge for the same offense, subsequent to the trial, in a trial at the county seat of the county, and in a court house provided by the commissioners' court of the county. Suppose A and B were candidates for the office of sheriff, and A received two hundred votes and B received two hundred and twenty-five; the returning officer, shows this by his order declaring the result of the election, and issues his certificate of election to A. Would this make A the Sheriff elect? Certainly not; because B has received the majority vote, which the law prescribes will elect B to office, and the order of the returning officer can not change the result, and his certificate issued to A exceeds his authority; and does not confer upon A the honor of Sheriff *de facto.* (See Laws Seventeenth Leg., ch. 12, p. 7.)

I submit the same principle would apply to elections for county seats, and when the defendant was put upon his trial he had the right to show the facts to a jury, and, if they were found to be true by the jury, to have a trial by due process of the law of the land, which demands that he be "tried at the legally established county seat of the county, and in a house provided by the commissioner's court of the county." We contend that this was a suit by the State against appellant, seeking to obtain a conviction in the manner prescribed by law, "only." The defendant was combating with her to defeat the conviction, and demanding that he have a trial according to due process of law, and informed the court by plea, under his oath, at the proper time, that no legal trial could be had at Marfa, and asked that he be permitted to establish the facts alleged in his objection to the jury. He was deprived of this constitutional and legal right; which I submit was a glaring error for which the case should be reversed. Did the county judge and one other commissioner, besides W. J. Bishop, who was under arrest, constitute a quorum of said court that could designate a "court house," or transact any other business? We think not. Section 18, Article 5, of the Constitution, provides that each county shall in like manner be divided into four commissioners' precincts, in

each of which there shall be elected by the qualified voters one county commissioner, who shall hold his office for two years, and until his successor shall be elected and qualified. "The county commissioners so chosen," with the county judge as presiding officer, shall compose the county commissioners' court, which shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of this State, or as may be hereafter prescribed." It will be seen by the above Article that the Constitution itself defines what shall constitute the commissioners' court, to wit, "the commissioners elected from each one of the four commissioners' precincts, with the county judge as presiding officer," and it leaves no discretion with the Legislature to say how many of said commissioners, with the county judge as presiding officer, shall constitute said court or a quorum thereof, for any purpose; but does give the Legislature large discretion in defining their "powers and jurisdiction over all county business." Under this the Legislature would have the right to increase or diminish the "powers and jurisdiction" of the commissioners' court as defined by the above section of the Constitution, but not to say that any less number of said commissioners shall constitute a quorum. There is a material difference in what constitutes a court, and the powers and jurisdiction. I now submit there is a repugnancy between Article 1511, Revised Statutes, and Article 5, section 18, of the Constitution, which attempts to substitute any two members of said court, together with the county judge, in lieu of the four commissioners with the county judge as presiding officer, as prescribed by section 18, Article 5, of the Constitution of 1876. This article creates a new tribunal not provided for at all by the Constitution, and we contend that if the county judge and two commissioners had met in the town of Marfa, and assumed to themselves the dignity of commissioners' court, and provided a court house in the town of Marfa, their acts would have been void; but should we be wrong in our views as to the constitutionality of Article 1511, Revised Statutes, then we say that there was not in the town of Marfa, on the first day of August, 1885, a quorum of said court, as defined by Article 1511, Revised Statutes, who were present and acting under their own free will and lending their assent to the action of what purported to be a commissioners' court.

Consent is of the very essence of all contracts, and where a party is by compulsion forced to do an act, let it be what it may,

there is no consent, for this must be voluntarily. Was W. J. Bishop coerced to attend this purported term of the commissioners' court by arrest and imprisonment? In his affidavit he swears that he was a commissioner of Presidio county; that he was arrested by the deputy sheriff of Presidio county, and carried to the town of Marfa, and in the presence of W. H. Slaughter, county judge, and one Adam Wedell, who purported to be a commissioner of Presidio county; that the said county judge purported to be holding a special term of the commissioners' court of Presidio county on the first day of August, 1885, at the town of Marfa, in said Presidio county, and the affiant did then and there express his unwillingness to participate in said purported special term of said commissioners' court, and he refused to participate further than his presence, which he was compelled to do by reason of his being under arrest, and he was afraid to try to leave said court for fear of excessive cruel treatment by said county judge; that he informed the county judge that he was a prisoner and felt that he had no will of his own, and that he remained through fear, and that he was opposed to accepting a house as a temporary court house. After the adjournment of the purported commissioners' court, he asked C. L. Nevill, sheriff of Presidio county, if he was at that time permitted to go at liberty. And the county judge approved defendant's bill of exceptions, which embodied this affidavit, without any explanation; which is an admission of the correctness of the allegations of said affidavit. We think these facts show that W. J. Bishop was under duress, and compelled by fear of cruel treatment to honor the purported court with his presence, and it was tantamount to reducing the number to two, one commissioner and the honorable county judge.

Mr. Parsons, in his work on contracts, 6 edition, page 434, in speaking of duress, says actual violence, if not so slight as to be quite unimportant, is sufficient to annul a contract made under its influence. Imprisonment in a common jail, or elsewhere, is duress of this kind. It will not be denied that the same principles will apply to this case, as the very object of the people, as expressed in the Constitution providing for county commissioners, was to give them discretion in all matters over which they had jurisdiction. A court without discretion would be a hobby horse. The law provides for the punishing of a county commissioner for willfully absenting himself from the court, but no where lends its sanction to arrest and intimidate a commissioner,

and, I might say, force him into measures contrary to his will, wish and judgment, but frowns with contempt, and condemns such acts. The defendant had the right to plead this for his own protection.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction is for keeping a disorderly house. The defendant, by a special plea, challenged the right of the court to try the cause at the town of Marfa, alleging that said town was not the county site of Presidio county, but that Fort Davis was the county site of said county. This plea set forth at length the facts relating to the county site question in said county, and by those facts it is shown that, at the time of the trial of this cause, it was claimed by the county judge and other officials of said county that the said town of Marfa was the legal county site of said county, made so by an election held for that purpose, and said county officials had moved the public records of said county to said town of Marfa, and transacted the public business of the county at said place, and recognized said place as the county site of said county.

In other words, the facts recited in said plea show that, at the time of said trial, the town of Marfa was the *de facto,* if not the *de jure,* county site of said county. Said plea was stricken out by the court and the court refused to hear proof in support thereof. In this action of the court there was no error.

The jurisdiction of the court to try this case at Marfa did not depend upon the question whether or not Marfa was the county site *de jure* of Presidio county. It being *de facto* the county site was sufficient to give the court jurisdiction—*Marfa* was being occupied and recognized as the county site under color of authority of law—under color of its having been selected and established as such county site in the mode provided by law. The plea sought to inquire into and determine whether it was the county site *de jure.*

This question could not be raised collaterally. If Marfa was not rightfully and legally the county site, being such *de facto,* its legality as a county site could only be inquired into and determined by some direct proceeding had for that purpose. Such direct proceeding has been taken, and our Supreme court, since this conviction was had, in such proceeding decided that *Fort Davis* and not *Marfa* was the county site, *de jure,* of Presidio

county. (L. B. Carothers v. The State, Tyler term, 1886.) But, as before stated, Marfa, at the time the trial and conviction in this case were had, was the county site, *de facto*, and, being so, it matters not in this case that it was not the county site, *de jure*. This question is analogous to a collateral attack made upon the authority of an officer, *de facto*. The authority of a *de facto* officer can not be questioned collaterally. His official acts, until ejected from office, are valid. (Aulanier v. The Governor, 1 Texas, 653; McKinney v. O'Conner, 26 Texas, 5; Ex Parte McCall, 2 Texas Ct. App., 497.) We are of the opinion that the trial of the case at Marfa was legal and valid, notwithstanding said town was not the legal county site of Presidio county at the time.

That the grand jury which presented the indictment had, before such presentment, excused one of its members for the term, leaving only eleven members of said jury, presents no good ground for a reversal of the conviction, nor does the fact in any manner affect the validity of the indictment. (Smith v. The State, 19 Texas Ct. App., 95.)

We find that the evidence amply supports the conviction, and that the charge of the court is applicable to the evidence, and, when considered as a whole, is correct. The judgment is affirmed.

*Affirmed.*

Opinion delivered December 15, 1886.