(No. 22060.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN BAIN *et al.* Plaintiffs in Error.

*Opinion filed October 24, 1934—Rehearing denied Dec. 5, 1934.*

HARRY OLSON, SANFORD OLSON, and JOHN H. ROGERS, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The plaintiffs in error (hereinafter called the defendants) were indicted by the grand jury for the September term, 1932, of the criminal court of Cook county. The indictment charged the defendants severally, as officers of the West Englewood Trust and Savings Bank, on June 9, 1931, with receiving a deposit of $33 then and there knowing that such bank was then, and for a long time prior thereto had been, insolvent, and that because of such insolvency such deposit so made was lost to the depositor. (Smith's Stat. 1933, chap. 38, par. 61, sec. 1, p. 1007; Cahill's Stat. 1933, chap. 38, par. 38, sec. 1, p. 991.) The defendants were found guilty and sentenced to pay a fine of $66 and to be imprisoned in the penitentiary for not less than one nor more than three years. A constitutional question being involved, a writ of error was sued out direct from this court.

Numerous errors are assigned upon the record, but they may be grouped under three divisions: (1) The proceedings upon which the indictment, conviction and sentence were had took place in the criminal court building of Cook county located in the town of West Town of such county, and not at the county seat of Cook county and not being the place provided by law for the holding of any such proceedings all such proceedings were void; (2) the grand jury which returned the indictment against the defendants was an illegal grand jury for the reasons (a) the act under which it was ordered, drawn and impaneled was unconstitutional, (b) more than twenty-three names were drawn from the grand jury box, and (c) the grand jury was not drawn by lot and by chance; (3) the court erred in overruling the plea in bar interposed by the defendants, in finding them guilty and in imposing the judgment of conviction.

In support of their first assignment of error the defendants urge that the criminal court building, located at Twenty-sixth street and California avenue, in the city of Chicago, is not within the corporate limits of the original town of Chicago. By section 1 of "An act to create and organize the counties herein mentioned," in force January, 1831, (Laws of 1831, p. 54,) the county seat of Cook county is declared to be permanently established at the town of Chicago. Section 10 of the same act provides that "the public buildings at Chicago shall be erected on the public square as laid off by the canal commissioners on the south side of the Chicago river."

The defendants trace in a very entertaining and. instructive manner the historical chronology of the several legislative acts from 1831 dealing with the location of county seats in this State. The facts show that the criminal court building of Cook county is situated approximately six miles from the county building, which latter place is located within the corporate limits of the original

town of Chicago. It is conceded that the criminal court building is erected outside of the corporate limits of the original town of Chicago but within the present corporate boundaries of the present city of Chicago.

The legislature passed an act approved July 2, 1925, by which it was provided that in counties of 500,000 inhabitants or over, where the county seat is located entirely within the corporate limits of a city or village, the limits of such county seat shall be co-extensive with the boundaries of such city or village as the same then existed or may thereafter be constituted. (Cahill's Stat. 1933, chap. 34, par. 118, p. 860; Smith's Stat. 1933, chap. 34, par. 111a, p. 871.) The People rely upon the authority of the statute of 1925 as finally settling any question as to whether such county building is located at the county seat. The defendants contend that that statute neither applies to nor cures the situation presented; that if the statute does apply it is unconstitutional and is violative of section 4 of article 10 of the constitution; that to give the statute the construction claimed by the People is to permit the removal of the county seat without a vote of the people, as required by such section 4. The People further urge that there is no requirement of the constitution creating the criminal court which requires it to sit at the county seat, and that if the act of 1925 is violative of the constitution, nevertheless the criminal court, by virtue of such statute, is located and functions at the *de facto* county seat, and the question of whether the criminal court legally acted within the criminal court building is not open for investigation or decision in this proceeding. The cases cited by the defendants in support of this branch of the case are not in point.

There are several States in which the courts of last resort have held that where the *nisi prius* court has been conducted at a place fixed by statute, even though such statute be invalid, the action of the authorities so locating the court house may not be questioned collaterally and that

the place where the court was held was a *de facto* county seat. *Territory* v. *Clark,* 15 N. Mex. 35, 95 Pac. 697; *In re Allison,* 13 Colo. 525, 22 Pac. 820; *Sevier* v. *Teal,* 16 Tex. 371; *Watts* v. *State,* 22 Tex. App. 572, 3 S. W. 769; *Day County* v. *Kansas,* 19 Okla. 375, 91 Pac. 699.

In *Robinson* v. *Moore,* 25 Ill. 118, the error, and apparently the only error, assigned on the record was that the judgment of the circuit court of Saline county sought to be reviewed in that case was rendered at Harrisburg instead of at Raleigh, the county seat. The opinion of the court states: "So far as we can judge from the manner in which this case has been presented, we suppose it is the purpose of the appellants to try in this mode as to where the legal county seat of Saline county is. * * * But beyond all this, we cannot try the question sought to be raised, in this collateral way. Whenever we settle that question it must be on a direct proceeding for that purpose. This may be a question of great doubt, depending on controverted facts, and it would be monstrous, indeed, to hold, that if the circuit judge was mistaken in his conclusions as to which place was the legal county seat all his judgments were therefore void and all his proceedings mere nullities. Such is not the law, and the judgment is affirmed."

The issue decided in the *Robinson case* is based upon just and sound legal principles. That decision has stood as the law of this State for almost three-quarters of a century, and we are not disposed to depart from it nor question the soundness and correctness of its holding. This proceeding is not a direct proceeding attacking the validity of the act of 1925, nor is the question open as to the legal right of the criminal court to exercise its judicial functions at a point without the boundaries of the original town of Chicago.

The alleged insufficiencies and defects of the indictment go to the legality of the body returning it and not to

the sufficiency of the indictment as a pleading. A written motion to quash the indictment was made by the defendants, severally. This motion set out fully and in detail the reasons urged against the validity of the indictment as grouped under divisions (1) and (2), *supra.*

On behalf of the People it is asserted that the grounds urged against the legality of the indictment cannot be reached or reviewed on motion to quash; that a motion to quash reaches only defects appearing within the four corners of the indictment, as a paper pleading or some defect shown on the record at the time of the making of the motion. Their position in this respect is not tenable. Early in the history of this State this court recognized the rule that an attack on the validity of an indictment because returned by a body not legally assembled could be reached by a motion to quash the indictment. (*Bell* v. *People,* 1 Scam. 397; *Stone* v. *People,* 2 id. 326.) The practice in that respect so approved by those decisions has been adhered to by many subsequent decisions of this court. The legality of the constitution of the grand jury may be reached by a motion to quash, and the court may hear evidence upon the hearing of such motion. (*Marsh* v. *People,* 226 Ill. 464; *People* v. *Green,* 329 id. 576.) Following the reasoning of that same rule of procedure, this court has held that on motion to quash, the court may inquire into the question of the legally elected and acting State's attorney as to whether he is a licensed attorney, whether he can lawfully attend the sessions of the grand jury, and whether the indictments signed by him as such State's attorney are valid. *People* v. *Munson,* 319 Ill. 596.

The legality of the grand jury returning the indictment in this case is challenged on several different grounds by the defendants. It is urged that the Jury Commissioners act as amended by act approved July 2, 1931, (Smith's Stat. 1933, chap. 78, p. 1748 *et seq.;* Cahill's Stat. 1933, chap. 78, p. 1725 *et seq.;*) is unconstitutional, in that it is

a local or special law regulating the practice of courts of justice and providing for the summoning and impaneling of grand and petit juries contrary to the provisions of section 22 of article 4 of our State constitution, and also violative of section 29 of article 6, which requires that all laws relating to courts shall be general and of uniform operation, and that all laws regulating the organization, powers, proceedings and practice of all courts of the same class shall be uniform; that the act is unconstitutional in attempting to delegate powers to the judges of the courts of record of Cook county to promulgate rules governing the manner in which the act shall be executed, and because the act does not prescribe the number of names to be kept in the grand jury box.

The Jury Commissioners act, approved June 8, 1897, has heretofore been attacked as being in contravention of the same sections of articles 4 and 6 above mentioned. The act was held not violative of either of such sections. (*People* v. *Onahan,* 170 Ill. 449.) Since that decision different amendments have been made to the act, including the basis of population. On the authority of the *Onahan case* we hold that the entire act is not unconstitutional.

The Jurors act (Cahill's Stat. 1933, chap. 78, sec. 2, p. 1721; Smith's Stat. 1933, p. 1744;) deals with the method of providing juries, and as one of the qualifications of jurors states: "Second—Of the age of twenty-one (21) years or upwards, and under sixty-five (65) years old." Section 2 of the Jury Commissioners act fixes the qualifications of jurors between the ages of twenty-one and sixty years. There is thus attempted to be made a material difference in the qualifications of those electors qualified for jury service in Cook county and those electors qualified for jury service in the State outside of Cook county. Section 2 of the Jury Commissioners act falls within the inhibitions of section 22 of article 4 and section 29 of article 6 of the constitution. It is both a spe-

cial law and a law pertaining to courts, and is not a uniform law as applied to courts of the same class or grade throughout the State. (*Strong* v. *Dignan,* 207 Ill. 385; *People* v. *Rodenberg,* 254 id. 386; *People* v. *Meech,* 101 id. 200; *Devine* v. *Cook County Comrs.* 84 id. 590.) The invalidity of section 2 of the Jury Commissioners act does not, however, invalidate the whole act. (*Weksler* v. *Collins,* 317 Ill. 132.) Since section 2 of the Jury Commissioners act is invalid, jurors drawn should have the qualifications required by section 2 of the Jurors act. The jury commission has evidently recognized the invalidity of said section, as the record shows the jury list is made up of electors from twenty-one to sixty-four years of age.

It is also argued that section 11 of the Jury Commissioners act is invalid and that therefore the whole act is void. The grounds of this objection urged are, that section 11 delegates powers to the judges of the several courts of record of Cook county to make rules governing the manner in which the act shall be carried out, and because it does not prescribe the number of names to be kept in the grand jury box. Section 11 permits only such rules to be made by the judges as are consistent with the act. It is no longer an open question in this State that where the legislature has the power to enact a law, it also has the power, as a necessary adjunct to such power, to adopt a procedure for the administration of such law. It may do so through commissions, boards or committees, and may grant to such administrative bodies certain authority and powers in keeping with the spirit of the act, for the efficient and practical application and operation of the statute. The jury commission is an arm of the court. As such, the legislature could very properly delegate to it power to make rules for the efficient working of the Jury Commissioners act. *Reif* v. *Barrett,* 355 Ill. 104.

The constitution does not require any particular number of names to be kept in the box for grand jury service

and there is no statutory enactment to that end. The number of names of persons for grand jury service to go into the box may properly be left to the discretion of the judges of the courts of record, evidenced by rules adopted for that purpose. The record shows that 1000 names were kept in the box at all times for grand jury service. The purpose of the act was thus fulfilled so far as the number of names maintained at all times for grand jury service is concerned. The entire act is not unconstitutional for the reasons urged against it.

It appears from the record that rules were promulgated by an executive committee of the judges of the courts of record of Cook county under the authority conferred upon such judges by section 11 of the Jury Commissioners act for the purpose of prescribing the powers and duties of the jury commissioners, regulating in general the conduct of their office and carrying out the provisions of such act. It is claimed by the defendants that all of such rules are void because they purport to be made by an executive committee of judges rather than by a majority of such judges. The burden was on the defendants to show the invalidity of the adoption of the rules. In the absence of proof to the contrary, it is presumed that the judges of the courts of record did their duty and that the majority of the judges duly ratified the action of their committee in pronouncing such rules.

Complaint is made of the method herein pursued by the jury commissioners in providing jurors, both grand and petit, for jury service, and it is earnestly urged that the statute has not been followed in that respect. There is merit in this contention. Section 8 of the Jury Commissioners act requires that the jury commissioners shall make an active jury list available for the clerks of the several courts of record, to be drawn therefrom, under the law, by means of such devices and mechanisms as the rules of the judges shall prescribe, and provides that two of the

jury commissioners, or one of their number and a judge of a court of record of the county, shall be present at such drawing, along with the clerk of the jury commissioners. Subdivision (*b*) of section 8 provides that the jurors in the period list, as well as the jurors from the active list for grand as well as petit jurors, shall likewise be drawn by lot. Section 9 provides that whenever a grand jury is required by law or by order of the court, it shall be drawn and certified the same as those persons drawn for petit jury service. Sections 8 and 9 should be read together. From such reading it is apparent that the grand jurors shall be drawn from the period list as well as from the active jury list. The evidence shows in this case that the period jury list was contained in four separate containers, each containing names of jurors who preferred certain times of service in the three-months' period, and that no part of the grand jury was drawn from the period list. The period list was used only for drawing petit jurors, and the names in such box were exhausted before the names in the larger petit juror box were resorted to. The result is that this is not a compliance with the intention of the act in the drawing of grand jurors by lot. Also no mechanical devices were used in the drawing, as required by the statute to be prescribed by the rules of the judges.

Section 8 of the Jury Commissioners act provides that the active jury list, except as to the names certified back to the clerk of the court as provided in section 10 of the act, and the period lists, shall be prepared in such manner as to insure, as near as may be, a proportional representation therein of the whole body of electors, in respect either of their occupations or of the particular localities wherein they reside. It is evident that the legislative intent is that the juries, both grand and petit, shall not be drawn from one locality, but that the different political subdivisions of the county, in accordance with and in proportion to the population, shall be represented. This is a wholesome pro-

vision. The city of Chicago has a population of approximately 3,475,000, and the territory within Cook county outside of the city of Chicago has a population of approximately 630,000. The grand jury which returned the indictment in the case at bar was composed of thirteen men from the city of Chicago and ten from without the city, and all of the grand jurors reside in ten of the thirty-three towns of the county. It is, of course, possible that this proportion could be drawn out of the box.

It is further earnestly argued by the defendants that the grand jury which returned the indictment in this case was not drawn according to law, and that it was an illegal body, without power to return a valid indictment. The record shows that the court ordered sixty names drawn for grand jury service. Five men were reported not found. Twenty-five were excused before return day, but by whom does not appear. It does appear as an uncontroverted fact in the record that one of the jurors summoned for grand jury service took the summons which he had received to a friend, who in turn took him to some clerk in the criminal court building, who excused such grand juror from service. However, thirty of the panel, except possibly one or two, reported for duty on the return day, ready, able and willing to serve. The record is not clear, but there is evidence tending to show that one or two were excused by the court on that day at their request. There still remained an overplus of grand jurors. The trial judge instructed the clerk to call the names of the men left for grand jury service in alphabetical order, with the result that about six jurors whose names began with W were excused without any request on their part, while those whose names began with the earlier letters of the alphabet were accepted and sworn as such grand jurors. Thus was the grand jury for the September term impaneled and convened. The procedure was at least novel, even though without any semblance of complying with the requirements

of the statute. No man whose name began with **W** was accepted on the September grand jury. With this method consistently followed, a man whose name begins with **W** is fairly well assured he will have to perform little, if any, grand jury service. That mortal whose name begins with either the letter **X**, **Y** or **Z** could almost be guaranteed freedom from serving his State as a grand juror. The accident of name was the determining factor as to who would and who would not constitute the grand jury for the September term. Under the authority of *People* v. *Lieber,* 357 Ill. 423, we are constrained to hold that the trial court did not err in refusing to quash the indictment.

There remains the question as to whether the trial court erred in sustaining the demurrer to the defendants' plea and in sentencing them without requiring them to plead further or hearing evidence. The solution of this question is not without difficulty. The defendants filed a plea which they called a plea of estoppel by verdict. The People contend that the correct plea should have been *autrefois acquit.* Much space is devoted in the briefs to the discussion of this question of pleading. It is immaterial what may be the correct technical term of the plea filed. Its contents disclosed that the facts averred therein set up another trial at which the defendants were found not guilty, and they pleaded that judgment in bar of this proceeding. The plea filed is in the nature of a plea of former jeopardy and acquittal.

The plea in the case at bar stated, in substance, that the defendants were indicted by the February, 1932, grand jury of the criminal court; that count 27 of the indictment charged the defendants on June 9, 1931, with conspiracy to receive deposits while the West Englewood Trust and Savings Bank was insolvent knowing it to be insolvent, and to keep the bank open for the purpose of receiving deposits while the bank was insolvent; that a jury was waived and the cause tried before a judge of

that court; that the court trying the cause made the finding and entered judgment on the case in part, which judgment covered count 27, as follows: "The court finds that the People have not sustained by evidence beyond a reasonable doubt, within the rule laid down in *People* v. *Clark*, 329 Ill. 104, that the defendants conspired, as charged in the indictment, to receive deposits knowing the banks to be insolvent, or to keep the banks open to receive deposits when they knew that the banks were insolvent, as charged in other counts of the indictment, and the court finds the defendants cannot be held guilty under those counts."

The modern definition of "conspiracy" is generally defined to be a confederacy of two or more persons to accomplish some unlawful purpose or a lawful purpose by some unlawful means. (2 Bishop on Crim. Law, (9th ed.) sec. 175, p. 122.) To constitute a conspiracy under our statute there must be a concert of will and endeavor on the part of two or more persons to commit the unlawful act. Mere knowledge, acquiescence, approval or attempt on the part of one to perpetrate the unlawful act does not constitute conspiracy. (*Evans* v. *People*, 90 Ill. 384; 2 Bishop on Crim. Law, (9th ed.) sec. 190, p. 131.) It is obvious that in order to convict the defendants of the offense charged by count 27 of that indictment the People were required to prove, beyond a reasonable doubt, not only the receipt of deposits by the defendants, as officers of such bank, while the bank was insolvent, with knowledge on the part of the defendants that such bank was then and there insolvent, but the People were further required to prove, beyond all reasonable doubt, that the keeping open of the bank for the purpose of receiving deposits, with knowledge of its insolvency, was the result of the union of the wills and a concert of action for that purpose on the part of the defendants. The test as to whether the facts pleaded or proved constitute a former acquittal or conviction sufficient to bar a subsequent prosecution is

whether the facts charged in the later indictment would, if found to be true, have justified a conviction on the earlier indictment. If they do, then the judgment on the earlier indictment is a complete bar to a prosecution on the later indictment, otherwise not. (*People* v. *Mendelson,* 264 Ill. 453.) Tested by this rule, it is fundamental that the attack by the demurrer on the plea in bar was necessarily fatal to the plea. The trial court ruled properly in sustaining the demurrer to the plea on its merits.

Some confusion has arisen in this State as to whether a plea in bar, such as former jeopardy, may be filed independently of the plea of not guilty. In the case of *People* v. *Simos,* 345 Ill. 226, a plea of former jeopardy was filed, to which there was a replication. The replication was not demurred to nor was there any rejoinder to the replication. A motion made there to discharge the defendants on the plea and replication was denied by the court. The trial court held that the issue made by the pleadings was one of law for the court and not of fact for the jury. This court held that the trial court properly decided the issue. This court did state in the course of the opinion that the defense of former jeopardy may be made under a plea of not guilty, citing *Hankins* v. *People,* 106 Ill. 628, but the opinion adds, in substance, that a plea of former jeopardy has no place in the record.

In *Hankins* v. *People, supra,* which was a prosecution for misdemeanor, the defendants filed a plea of *autrefois convict,* to which the State's attorney demurred. The demurrer was sustained by the trial court, not because the facts set forth were provable under the plea of not guilty but because the plea did not show a former conviction or acquittal of the offense charged in the indictment to which the plea was filed. After the demurrer had been sustained to the plea of *autrefois convict* the defendant pleaded not guilty and the cause was tried on that issue. On review, this court said the plea of former conviction or former

acquittal was unnecessary, and for that reason the court did not err in sustaining the demurrer. This court, in discussing such ruling, said, in substance, that although the plea of *autrefois convict* and *autrefois acquit* had been used in our practice, they were useless under our statute and such defense could be made under the plea of not guilty. The opinion in that case was by a divided court.

In *Campbell* v. *People,* 109 Ill. 565, the record showed a special plea of *autrefois acquit* filed by the defendant. At the time of the decision in that case this court was composed of the same judges as constituted the court at the time of the decision in the *Hankins case, supra.* In the *Campbell case* the trial court sustained the demurrer to the plea of *autrefois acquit.* The opinion discloses that plea, and the ruling thereon, at considerable length. This court held the plea was too broad, as it went to the whole indictment; that if the defendant had pleaded not guilty as to the first count of the indictment and the plea of *autrefois acquit* to the second count a different issue would have been presented, but as that was not done, the demurrer was properly sustained by the trial court.

While this court has said, in substance, that special pleas in bar are no longer required by our statute, yet in the cases passing upon that subject, what was said in the opinions, except in the *Hankins case,* was unnecessary to the decision of those cases. The *Hankins case,* cited as authority in the decision upon the subject of special pleas in bar in the *Simos case, supra,* was, in effect if not by words, completely overruled by the same judges three years later by the decision in the *Campbell case, supra.* The *Campbell case* has never been overruled by this court. In *Durham* v. *People,* 4 Scam. 172, the defendant was tried on an indictment charging forgery. Subsequently he was again indicted upon substantially the same charge. To the later indictment he filed a plea of *autrefois acquit,* to which a demurrer was sustained. The defendant then pleaded

guilty and was sentenced to the penitentiary on that plea. On review by this court that judgment was reversed without remanding the cause and the defendant discharged. The practice of filing a plea of former jeopardy was recognized in *Gannon* v. *People*, 127 Ill. 507.

Where the plea in bar tenders an issue of law and not of fact, permission should be given to file the same. This rule will promote prompt disposal of cases where such pleas are proper, and will save the time of the courts and litigants, with the attendant economy upon the parties and tax-payers, in the administration of justice. In those cases where the people and the defendant are interested in securing a prompt disposal of the case upon a special plea in bar as a matter of law, and desire to avoid the delay of the ultimate decision of the case by the tedious process of a prolonged trial, the court can, without requiring any other plea, properly dispose of cases of plea in bar which tender an issue, and if the judgment is against the defendant the judgment should be *respondeat ouster,* so the defendant may plead over. We therefore hold that the trial court properly considered such plea and the demurrer thereto on the merits of the plea, and not because of any alleged ground that such plea was improperly filed under the statute, which provides that without complying with any other form it shall be sufficient to enter a plea of not guilty. (Smith's Stat. 1933, chap. 38, par. 731, sec. 3, p. 1102; Cahill's Stat. 1933, chap. 38, par. 755, sec. 3, p. 1085.) This statute does not prohibit the filing of special pleas in bar nor pleading an issue of law.

The People contend that the offense charged is a misdemeanor, and if a demurrer is sustained to a plea in bar the defendants are not permitted to plead over. In the trial court the People were not so confident of the correctness of that position, as the record shows that after the demurrer was sustained in the trial court the assistant State's attorney in charge of the case requested the trial judge to permit the

defendants to enter a plea of not guilty. In support of the claim that the defendants, having filed a plea in bar to which a demurrer was sustained, could not then plead over, the People cite *Freeland* v. *People,* 16 Ill. 380, *People* v. *Corbishly,* 327 id. 312, 1 Archbold on Crim. Pl. & Pr. p. 356, 1 Chitty on Crim. Law, *461, and *Rex* v. *Taylor,* 3 B. & C. 502, together with three cases from Colorado, Tennessee and Iowa, respectively. (*Hughes* v. *People,* 8 Colo. 536, 9 Pac. 50; *State* v. *Epps,* 36 Tenn. 552; *State* v. *Green,* 18 Iowa, 239.) In the *Freeland case* a misdemeanor was involved. The defendant filed his plea of *autrefois acquit,* to which a demurrer was sustained, and the trial court sentenced the defendant. The question of the right of the defendant to plead over is not discussed, mentioned or decided in that case. In the *Corbishly case* the defendants were charged with assault with intent to murder. The defendant Karadich was indicted by the name of Krodach. He first filed a verified special plea, in which he alleged that his name was not Krodach, as charged in the indictment. He also pleaded not guilty. A replication was filed stating that the defendant Karadich was as well known by the name of Krodach as by the name of Karadich. The case was tried. Some of the defendants, including Karadich, were found guilty. In discussing the question of special pleas, the court in the opinion stated that at common law, in felony and treason, where a dilatory plea or plea in bar is filed and judgment is against the defendant, he is allowed the plea of not guilty and trial on the merits, but in a misdemeanor, if the defendant tendered a plea in abatement and the plea is held bad on demurrer the judgment is that the defendant plead over, but if a plea in bar be held bad on demurrer the judgment is general against the defendant. A misdemeanor was not involved in the *Corbishly case.* Archbold and Chitty cite *Regina* v. *Goddard,* 2 Ld. Raym. 922, in support of their statement that in misdemeanors the rule is that the defend-

ant may not plead over after pleading in bar and the plea is held bad. That case involved a felony. *Regina* v. *Holt,* 92 Eng. Rep. (Reprint) 114, and 3 Salk. 171, 91 Eng. Rep. 728, each cites the *Goddard case* in support of the rule that a defendant in a misdemeanor may not plead over after pleading in bar and the plea is held bad. The case of *Rex* v. *Taylor,* 3 B. C. 502, was decided in 1824, and cites *Regina* v. *Goddard, supra,* in support of the rule announced in the *Taylor case.*

The English rule was reviewed in *Barge* v. *Commonwealth,* 39 Pa. 262, decided in 1831. In that case the early American authorities are reviewed in a very able opinion, and it was there held that "the same justice, not to say humanity, which originally dictated a judgment of *respondeat ouster* in felony, dictates the same judgment in cases of misdemeanor where the defendant's special plea in bar has been determined against him as a matter of law." The cases from the foreign States, *supra,* are bottomed upon the supposed English rule and cite *Regina* v. *Goddard, supra,* in support of such decisions. We are not disposed to follow the rule announced in the cases and text books cited by the People.

Bishop, in his New Criminal Procedure, (2d ed. vol. 2, sec. 755, p. 591,) announces the rule that if a defendant tenders a plea in abatement and it is demurred to, raising a question of law, or if in any other way the issue becomes one of law and the court decides against him, he may plead over to the indictment the same as in felony, and further states the rule that in various American courts the rule is the same if his plea is special in bar. He points out a distinction in misdemeanor cases that is recognized in some courts, that where the plea tenders an issue of fact and the finding is against the defendant he is not permitted to plead over, but where the plea tenders a matter of law to which a demurrer is sustained then the defendant is permitted to plead over. On that subject the author says:

"That wherever a man pleads a fact which he knows to be false, and a verdict be against him, the judgment ought to be final, for every man must be presumed to know whether his plea be true or false in matter of fact; but upon demurrer to plea in abatement there should be a *respondeat ouster,* because every man shall not be presumed to know the matter of law."

Generally no distinction has been made in the later cases by our courts of the right of a defendant to plead in bar and his right to also plead not guilty. The confusion has arisen not as to the right to plead over but as to whether the pleas of jeopardy, *autrefois acquit* and *autrefois convict* shall be pleaded specially or whether proof thereof shall be made under the statute *supra,* providing for the plea of not guilty. The modern rule, sustained by what we believe is the weight of authority in this country, is, that in a misdemeanor the defendant may plead in bar and also plead not guilty; that in those cases where special pleading is allowed and a demurrer is sustained to the plea in bar, the defendant, as a matter of right, may plead over not guilty to the charge made by the indictment or information, regardless of whether the offense charged is a felony or misdemeanor; and particularly is that true where the plea tenders an issue of law and the demurrer is sustained to that plea on the issue of law made by the plea. *Barge* v. *Commonwealth, supra; Commonwealth* v. *Golding,* 80 Mass. 49; *MacFarland* v. *State,* 60 Wis. 400, 32 N. W. 226; *Hirn* v. *State,* 1 Ohio St. 15.

The decisions of this court since *Hankins* v. *People, supra,* recognize the right of the defendant in a misdemeanor case to have the benefit of a plea in bar as well as the benefit of a plea of not guilty. The only difficulty in the practice has been as to the method of procedure by which the two issues should be made. In the case at bar the defendants, as a matter of right, were entitled to plead over after the demurrer was sustained to their plea in bar.

We hold that there is no distinction in this State as to the right to plead over between indictments for felonies and indictments or informations for misdemeanors. In both the defendant may plead over when a demurrer to his plea in bar has been sustained.

Following the holding of the trial court adversely to the contention made by the defendants' plea, a colloquy ensued between the counsel for the defendants, the assistant State's attorney trying the case, and the trial judge. The defendants were not entirely blameless in what thereafter followed in the proceeding, for they were then apparently anxious to have the cause disposed of on the record as it was after the sustaining of the demurrer to their plea, but the right to further plead was not waived by them, if they could waive such right—on which subject we express no opinion. Following the sustaining of the demurrer to the special plea the trial judge stated, "I think, under the theory of the law, where they file a plea in bar that is all there is to it." The trial judge then proceeded to sentence the defendants.

The statute provides that every defendant upon his arraignment shall plead, which plea shall be entered upon the minutes of the court. (Crim. Code, sec. 3, par. 731.) Section 5 of the same act provides that where the defendant stands mute or refuses to plead, the court shall order the plea of not guilty to be entered upon the minutes of the court. The trial court heard no evidence but imposed the maximum sentence provided by the statute upon the defendants. With the demurrer sustained to the plea, (which, however, contained no admission of guilt against them,) the defendants had no plea in the record to the indictment in the cause. The statute required a plea. It is imperative that the record shows a plea, and in the absence of such plea the court is without jurisdiction to enter a judgment of conviction. (*Johnson* v. *People,* 22 Ill. 314; *Aylesworth* v. *People,* 65 id. 301; *People* v. *Kennedy,*

198

303 id. 423.) The want of a plea is not a mere formality. (*People* v. *Kennedy, supra.*) This court for a period of approximately eighty-five years has consistently held that a plea is mandatory before the trial court has the authority to pronounce judgment against the defendant in a criminal case, regardless of whether the charge is a misdemeanor or a felony. The legislature has not seen fit during that period of time to change this rule by statute. The plea of former acquittal does not admit any guilt even when the plea is bad. The English rule is not sound. There is no good reason for holding that because a defendant fails on his plea in bar, especially where it tenders an issue of law, he should be conclusively held to have admitted the charge made against him. The trial court committed prejudicial error in sentencing the defendants without a plea in the record.

The judgment of the criminal court of Cook county is reversed and the cause is remanded to that court, with directions to proceed with the cause in conformity with the views herein stated.

*Reversed and remanded, with directions.*