(No. 36457

The People of the State of Illinois, Defendant in Error, *vs.* Fred Brown, Plaintiff in Error.

*Opinion filed November 30, 1962.*

ROBERT H. ARONSON, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

An indictment returned to the criminal court of Cook County jointly charged Fred Brown, Leonard McGarry, James Washington and Charles Gunn with the murder of Richard Hunter, who was shot to death in the course of an attempted robbery. Washington and McGarry pleaded guilty to the crime, whereas Brown and Gunn, who waived a jury, were found guilty after a bench trial and each was sentenced to the penitentiary for a term of 14 years. This writ of error is prosecuted by Brown, to whom we shall refer as defendant, and as grounds for reversal he contends that he was not proved guilty beyond a reasonable doubt,

that he had withdrawn from the robbery plan in such a manner as to avoid liability for its consequences, and that he was denied a fair and impartial trial due to the incompetency of his appointed counsel and to the admission of evidence relating to another crime.

The victim of the homicide was among those present on July 12, 1959, at a party being held in a basement apartment of a building located at 4601 S. Michigan Avenue in Chicago. Gambling seems to have been the principal activity at the "party," while the "apartment" appears to have been in the nature of an unlicensed tavern. Around 3:30 A.M. four men, later identified as defendant and those indicted with him, entered the premises. Washington and McGarry produced guns, under circumstances later to be detailed, announced that it was a stickup and ordered those present to lie on the floor. Decedent, however, jumped on McGarry's back and was shot by Washington, the fatal bullet first passing through McGarry's body. In the confusion the robbers were able to flee from the premises.

Defendant and Washington were apprehended in Nashville, Tennessee, and were delivered into the custody of Chicago police on August 17, 1959. At this time defendant made several oral statements and signed a written statement wherein he consistently acknowledged that he and his codefendants had first met in a tavern in South Chicago on the night in question and that they had driven to the Michigan Avenue address in furtherance of an express plan to rob those at the party. In addition, he consistently stated at all times prior to trial that he had looked through a window when they arrived at the apartment, that he then advised his companions he was not going in because there were too many people, and that he then took a taxi back to South Chicago. In his written statement he said he next saw his co-defendants an hour later in South Chicago, that McGarry was then suffering from a gun shot wound in the back, and

that McGarry had been taken to defendant's room and ministered to.

At the trial, however, defendant deviated materially from his prior statements and testified there had been no plan or conversation relating to a robbery and that he had gotten into the car with the others merely for the purpose of going to the party. He stated that just as they reached the entrance of the building McGarry announced he was "going to make him some money," whereupon defendant said he didn't want any part of it and took a taxi back to South Chicago.

The chief witness for the prosecution was defendant's co-conspirator, Leonard McGarry. Although completely irreconcilable with his subsequent testimony, McGarry also testified there had been no preconceived plan or intention of committing a robbery and stated he and his companions had set out for the apartment solely for the purpose of gambling. Gunn, it was stated, had lost money at the party earlier and wanted to win it back. According to McGarry, he and his three companions went into the apartment and found about 25 persons present. He said that Gunn walked in first and went to the bar, that Washington remained behind at the door, and that he and the defendant walked to the middle of the room at a point four to five feet equidistant from Gunn and Washington. One Jimmy Jones, who had driven the men to the apartment, remained outside in the car.

McGarry said that after looking around for a moment he remarked there were "too many people," and that defendant thereupon replied: "Yes, forget it, let's go." At this, to use McGarry's words, "most of us turned to go," but defendant asked him to wait and walked across the floor to a washroom. Immediately after defendant went into the other room, still according to McGarry, Washington pulled his gun, shouting as he did so, and when people started

running about McGarry drew his pistol, fired a shot into the ceiling and announced that it was a "stickup." The witness said he then vaulted over the bar and demanded the money there and that defendant, "looking surprised," came out of the rest room at this time. Several patrons attempted to seize defendant but, McGarry testified, defendant fought them off and ran out the front door shouting that "one had got away." It was following this that Hunter was fatally shot as he grappled with McGarry. Concluding his testimony, McGarry stated that he staggered to the car, that he lost consciousness, and that his next recollection was being taken to defendant's house.

Fletcher Henderson, who was present at the party, appeared as a witness for the prosecution and pointed out defendant as one of the robbers. However, it appears he had been unable to identify defendant when called upon to do so on two occasions before the trial. Another prosecution witness, Helen Wilson, who was tending bar in the apartment, testified that defendant had had a drink at the bar, prior to the shooting, and that she had not seen him after the melee occurred. Gunn, who was jointly tried with defendant, testified on cross-examination that he was the last to arrive at the apartment where the murder took place, that defendant, Washington and McGarry were already present in the front room, and that he, the witness, had protested when Washington pulled a gun.

Defendant's initial contention that he is not guilty of murder because he had abandoned and withdrawn from the criminal enterprise of his companions must fail in two respects. We held in *People* v. *Rybka*, 16 Ill.2d 394, 406, that it is "the communication of intent to withdraw and not the naked fact of withdrawal that determines whether one who advised, encouraged or incited another to commit a crime is to be released from liability as an accessory before the fact." To this need may be added the further requirement that the withdrawal must be timely, that is to say it

must be "such as to give his co-conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act is committed," and it must be possible for the trier of fact "to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed." (*People* v. *Nichols,* 230 N.Y. 221, 129 N.E. 883, 886; also see: *Galan* v. *State,* 44 Ohio App. 192, 184 N.E. 40.) Stated otherwise, withdrawal may not be effectively made from a felony murder when the "transaction which begets it has actually been commenced." *People* v. *Nichols,* 230 N.Y. 221, 129 N.E. 883, 886.

In the instant case, while there may have been "communication" by defendant to McGarry, the evidence in the record does not satisfactorily show communication to Washington and Gunn who were admittedly four to five feet away in a noisy, crowded room. Indeed, Washington was standing behind defendant and McGarry and his conduct in drawing a gun when he did strongly militates against the argument that he had been apprised of the alleged abandonment by defendant. However, even if it could be said that communication to Washington and Gunn is a matter in which reasonable doubt should be resolved for defendant, we are of the opinion the attempt at withdrawal came too late. Not only was there insufficient time given to provide the co-conspirators a reasonable opportunity to withdraw, but the criminal enterprise which begot the murder had already commenced. When defendant and his companions, at least two of whom were armed, entered the apartment they passed beyond mere preparation in their common plan to rob those present, and defendant, by his presence, was efficiently encouraging and aiding the others. Cf. *People* v. *Chapman,* 224 N.Y. 463, 121 N.E. 381.

Nor is it of any consequence that defendant had fled

the premises before the murder of Hunter took place. Defendant knew his companions were armed and is deemed to have known they would use their weapons if resistance was met. Where conspirators contemplate that violence may be necessary to enable them to carry out their conspiracy or common purpose, all are liable for the acts done in furtherance of the common object, and where death results from the prosecution of the common object, all are equally guilty of murder, whether or not each is actually present. *People* v. *Rybka*, 16 Ill.2d 394; *People* v. *Suddeth*, 374 Ill. 132.

It is next claimed that the evidence does not establish defendant's guilt beyond a reasonable doubt because there is no satisfactory proof that defendant and his companions planned to commit robbery, and because the evidence fails to place defendant "in the premises at any time that morning." The evidence on both points, however, is merely conflicting and we see no basis in the record for substituting our judgment for that of the trial court in the resolution of such conflict. While McGarry, the prosecution's own witness, denied any plan to commit robbery, his subsequent testimony belied such a denial. Moreover, defendant's own written statement in evidence and his exculpatory statements to the police at the time of his arrest admitted to such a plan. It is true, too, that defendant consistently denied that he had entered the premises and that the identification made by the witnesses Kemp and Wilson was far from being clear and satisfactory. As opposed to this, however, was the testimony of both Gunn and McGarry that defendant had been in the premises, and it was the function of the trial court to determine their credibility. Considering also the proof of defendant's flight to Tennessee with Washington after the crime, and the circumstance that the wounded McGarry was taken to defendant's home, we are satisfied that the evidence was sufficient to prove beyond all reasonable doubt

that defendant was a party to, and participated in, the criminal enterprise.

In connection with the latter contention our attention is called to a preliminary police report which stated that the crime had been committed by "three unknown colored men." Although defendant advances this report as support for his claim that he had not entered the premises, the record shows that Gunn was the conspirator who remained in the background. Furthermore, the inference defendant seeks to draw from the report at best could do no more than to raise a conflict with the testimony of McGarry and Gunn that defendant was present, and the entire record supports the trial court's resolution of such conflict against the accused.

Defendant's statement, which was introduced into evidence without objection, contained an admission that defendant had participated in another robbery with McGarry and Gunn six days earlier and it is now urged that the admission of evidence of such unrelated crime denied defendant a fair and impartial trial. (See: *People* v. *Gregory,* 22 Ill.2d 601; *People* v. *Oden,* 20 Ill.2d 470.) While it is the general rule that evidence of other offenses unrelated to the crime for which a defendant is on trial is not competent, well recognized exceptions establish that such evidence may be admissible to prove design, motive or knowledge when those matters are in issue or relevant. (*People* v. *Watkins,* 309 Ill. 318; *People* v. *Davis,* 412 Ill. 391; Cleary, Handbook of Illinois Evidence, sec. 7.10, p. 89.) The defendant in the present case not only denied that he had ever known Gunn before the night in question, but also denied that he and his companions had entered into a plan to commit the robbery on this occasion. Defendant's knowledge of the conspirators and the conspiracy being thus put in issue, it is our opinion that the evidence now objected to, *viz.* that defendant had participated in a robbery with Gunn and McGarry but six days previous, became relevant to such

issues. As stated in Conrad, Modern Trial Evidence, sec. 226, pp. 200-201 : "Evidence which tends logically to overcome any material fact sought to be proved by the defense is also admissible, although it may show the commission of another crime." In addition, with defendant adopting the position that there had been no conspiracy between him and his companions to commit robbery, we are of the opinion the disputed evidence was admissible under the exception which permits evidence of acts showing a common scheme or purpose. When a defendant's conduct in connection with a previous crime, particularly where the previous crime is recent and near in time, bears some similarity in significant respects to defendant's conduct in connection with the crime charged so as naturally to be caused by a general plan, the similarity indicates that the conduct was directed by design, and evidence of conduct in connection with proof of a prior offense is admissible. See : *People* v. *Steele,* 22 Ill.2d 142; *United States* v. *Iacullo,* (7th cir.), 226 F.2d 788, *certiorari* denied 350 U.S. 966; *People* v. *Peete,* 28 Cal. 2d 306, 169 P.2d 924, 931, *certiorari* denied 329 U.S. 790; Conrad, Modern Trial Evidence, sec. 227; Wigmore on Evidence 3rd ed. vol. 11, secs. 397, 370.

For his final contention defendant asserts that the incompetency of his appointed counsel denied him a fair trial, the sole basis being counsel's failure to object to the admission of the evidence relating to another crime. While we are constrained to remark that the entire record shows a tenacious and capable defense on the part of appointed counsel, it is enough to say that this contention of defendant has been answered by our finding that the evidence of a prior crime was not improper in this case.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*