**People of the State of Illinois, Plaintiff-Appellee,
v. Dewright Baxter, Defendant-Appellant.**

**Gen. No. 50,506.**

First District, Fourth Division.
September 13, 1966.

Leonard A. Spalding, III, of Chicago (Leibman, Williams, Bennett, Baird and Minow, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

## CHARGE

Unlawful sale of narcotic drugs [1] and conspiracy to sell same.

## JUDGMENT

After a jury verdict finding defendant guilty on both charges, the court entered judgment on the charge of unlawful sale and sentenced defendant to life imprisonment.[2]

## POINTS RAISED ON APPEAL

(1) Defendant was not proved guilty beyond a reasonable doubt.

(2) It was reversible error to admit testimony of an informer concerning prior narcotic transactions with the defendant.

## EVIDENCE ON BEHALF OF STATE

*Police Officer William Demke*

On July 29, 1964, he participated in a conversation at the 11th District Police Station with Officers Simpson, Nadile and Kelly and an informer named Buonauro. Thereafter, the officers made a thorough search of

---

[1] Ill Rev Stats (1961), ch 38, § 22–3 provides in pertinent part:

It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this Act.

"Sale" is defined in § 22–2(1) as follows:

"Sale" means and includes traffic in, barter, exchange, or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, broker, agent, servant or employee.

[2] His codefendant at the trial, Herbert Martin, was sentenced to fifteen to thirty years. In an opinion filed concurrently that conviction was affirmed (Case number 50505).

■■■■■■■

Buonauro's person and clothing to ascertain whether or not he carried any narcotics. Satisfied that he did not, the officers then gave Buonauro $23 in bills the numbers of which had been prerecorded. The bills had also been powdered with a fluorescent substance. Buonauro then accompanied the policemen to the vicinity of Loomis and Madison Streets where he pointed out a man on the southwest corner; the man was defendant. Buonauro then walked across the street and conversed with him. The officers stationed themselves in a restaurant directly across the street where they were able to observe both men. Following a short conversation which the officers could not hear, Buonauro stood by as defendant walked approximately fifteen feet over to another man, said a few words to him, also unheard by the officers, and returned to Buonauro. This second man was codefendant Herbert Martin. Buonauro walked over to Martin and the two of them then went west on Madison Street while defendant Baxter remained on the corner. Officer Demke then followed Buonauro and Martin and, from a position on the opposite side of the street, observed them enter a liquor store. By the time Demke crossed the street Buonauro and Martin had emerged from the store, whereupon Buonauro handed Demke a tinfoil package. Demke then arrested Martin and, after the arrival of Officer Simpson, Martin was searched and found to have a five dollar bill, four singles, some change and a pack of cigarettes in his possession. Demke then field tested the contents of the tinfoil package which Buonauro had given him and found the substance to be an opium derivative. Simpson entered the liquor store and, when he returned to the car, they all proceeded again to Madison and Loomis Streets where they picked up Officer Nadile who had defendant Baxter in his custody.

*Robert Buonauro*

He had been a narcotics addict for ten years and, in fact, had used narcotics on the morning of the trial. He

440

also admitted convictions for several criminal offenses. On July 29, 1964, Buonauro met the above-mentioned officers at the police station. After being searched, he was given a ten dollar bill which was marked with indelible pencil and the serial number of which was recorded by the police officers. He was also given an additional thirteen dollars. Buonauro then accompanied the officers to Loomis and Madison Streets where he observed defendant Baxter on the southwest corner of the intersection and walked up to him. He had seen defendant every day for about three months prior to that time. Over objection of defense counsel, Buonauro was then permitted to testify that he had seen defendant on those occasions "for buying narcotics mostly," and that he had bought those narcotics from defendant. On the instant occasion Buonauro asked defendant if he had any "stuff" [3] and the latter queried whether Buonauro had any money. Buonauro showed defendant the ten dollar bill. Defendant then said, "wait a minute," and walked over to a man with whom Buonauro was not acquainted, although he had seen him on Madison Street before. He identified this man as Martin. When defendant returned he told Buonauro: "This guy has got one bag, if I wanted to buy it to go ahead with him." Buonauro then went to Martin and asked him if he had a bag. Martin exposed a tinfoil package and Buonauro exposed his ten dollars. The two men then walked about a half block and entered a liquor store where Martin took the ten dollars from Buonauro and purchased a pack of cigarettes. The clerk in the store put the ten dollars in the register and returned the change to Martin. Upon leaving the store, Buonauro signaled the officers and Martin was arrested. Buonauro returned the unused thirteen dollars to Officer Simpson.

On cross-examination Buonauro denied that he had ever been paid by the police for his services as an in-

---

[3] By "stuff," Buonauro stated he meant heroin.

former. He also denied telling defendant, in the presence of Officer Pates, that "they have got the wrong man, I am not even going to testify against you."

*Police Sergeant Charles Vondrak*

Assigned to the Chicago Crime Laboratory, he made laboratory tests of the substance contained in the tinfoil package and found that it was heroin.

*Police Officer Thomas Simpson*

He confirmed the testimony of Officer Demke from the time Buonauro was prepared for his contact with defendant until Martin's arrest. Further, after Martin's arrest, Simpson entered the liquor store where, in the cash register behind the counter, he found the ten dollar bill bearing fluorescent powder and police markings. (The bill was admitted into evidence.) He then went back to the car where Martin was in custody and shone an ultraviolet light on Martin's person, observing fluorescent powder on the latter's hands and pockets. Defendant was also put through the same light test, but the result was negative, indicating that defendant had not handled the ten dollar bill.

On cross-examination, Officer Simpson testified that Buonauro was given no payment for informing; that he informed because of his desire to rid the community of dope pushers. Simpson did not hear the conversation between defendant and Buonauro. Nor did he see what transpired in the liquor store after Buonauro and Martin entered.

### EVIDENCE ON BEHALF OF DEFENDANT

*Police Officer Henry Pates*

About a year prior to the trial he was present when Buonauro and defendant met at the police station and defendant said to Buonauro: "You know you're framing me. Why did you tell them?" Buonauro did not answer and Pates made him leave the room.

OPINION

(1) The actual delivery of narcotics and receipt of money in the transaction for which defendant stands convicted was carried out by his codefendant Martin. Defendant therefore points out correctly that to establish defendant's guilt his capacity must be proved and he must be shown to have been involved in the transaction as principal, broker, agent or employee. Ill Rev Stats (1961), ch 38, § 22–2, quoted above in footnote 1. He then contends that such proof is absent, arguing that the critical evidence of his participation in the sale was supplied by an admitted addict-informer whose testimony was not sufficiently corroborated to sustain a conviction, citing People v. Bazemore, 25 Ill2d 74, 182 NE2d 649. In Bazemore, a conviction based on the evidence of an addict-informer was reversed because the record showed no police surveillance of the alleged sale by defendant to the informer, no corroboration of the latter's testimony that such a sale had taken place, and none of the marked money was recovered when defendant was arrested two months after the alleged sale. In the instant case the testimony of Officers Demke and Simpson showed close police surveillance of the entire transaction although not including the words used in his conversation with defendant on the street corner.

Buonauro's testimony showed, in effect, that defendant established the price for the narcotics sale and verified Buonauro's ability to pay. He also spoke to Martin for the purpose of effecting the sale, relayed the message that Martin would sell narcotics to Buonauro, and suggested that Buonauro talk to Martin if he wanted to make a purchase. While the officers were unable to hear defendant's conversations with Buonauro and Martin, they did substantiate that these conversations took place. Moreover, there is clear proof that the alleged

object of these conversations, the sale of narcotics, actually transpired.

■ ■ As in the case of accomplice evidence, the testimony of an addict-informer must be subjected to close and careful scrutiny because of the recognized predisposition of such a person to give self-serving evidence not necessarily conforming to the truth. People v. Perkins, 26 Ill2d 230, 234, 186 NE2d 330; People v. Soto, 64 Ill App2d 94, 98, 99, 212 NE2d 353. However, as we have noted, we are not left here with the uncorroborated testimony of a drug addict, and in this circumstance the credibility of the informer's testimony was a matter for determination by the jury. People v. Hamby, 6 Ill 2d 559, 562, 129 NE2d 746; People v. Villalobos, 20 Ill2d 315, 318, 169 NE2d 745; People v. Norman, 28 Ill2d 77, 82, 190 NE2d 819.

The situation here is not unlike that in People v. Martin, 63 Ill App2d 492, 211 NE2d 753. There the addict-informer testified that he walked to a corner where he met defendant and advised him that he was looking for "something." Defendant told him to wait, and a few moments later they were joined by a third person who was told by defendant that the addict-informer wanted "something." The third person asked the informer if he had money, directed him to give the money to defendant, and then left for a few minutes. When he returned he gave a package to the informer. Although there was close police surveillance throughout the transaction, the conversations which took place between the three men were uncorroborated. The court affirmed the conviction. Unlike the case at bar, defendant in Martin received the money. However, his explanation that he had been duped by a plea from a fellow addict into providing the narcotics was not believed by the court. The fact that the addict-informer's version of the conversation was not corroborated was not deemed fatal to the conviction. Similarly, we think there was sufficient corrobo-

ration of Buonauro's testimony to permit the jury to determine the credibility of his testimony concerning the nature of his conversation with defendant.

■ If Buonauro's testimony is believed, there is sufficient evidence to sustain a conviction regardless of the fact that he had no physical contact with either the narcotics or the money. While the particular capacity in which defendant participated in the sale transaction may not have been fixed with certainty, this is not a critical weakness as long as the unlawful participation is proved. People v. Aldridge, 19 Ill2d 176, 179, 166 NE2d 563. We are of the view that the evidence is sufficient to establish defendant's guilt beyond a reasonable doubt.

(2) Defendant contends that it was reversible error to admit evidence of defendant's prior narcotics transactions. As recited above, Buonauro was permitted to testify that he had seen defendant "for buying narcotics mostly" every day for about three months prior to the sale charged in the indictment. In our opinion, defendant's point is well taken in this regard.

■ The general rule is that the admission of evidence concerning a different substantive offense, in support of the crime charged, is sufficiently prejudicial to constitute reversible error. People v. Gleason, 36 Ill App2d 15, 16, 183 NE2d 523. The reason for the rule is well stated in People v. Lehman, 5 Ill2d 337, 342, 125 NE2d 506, where the court said:

> Evidence of other crimes is objectionable "not because it has no appreciable probative value, but because it has too much." (I Wigmore, Evidence, 3rd ed, § 194.) The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime. And so, as a matter of policy, where the testimony has no value beyond that inference, it is excluded.

Accordingly, in People v. Rivas, 5 Ill2d 556, 562, 126 NE2d 638, a conviction for the sale of narcotics was re-

versed under circumstances described by the court as follows:

> Having been indicted for the alleged offense of selling six capsulefuls of heroin on June 28, the State offered evidence, over timely objection, to prove two separate and distinct offenses on June 27. But unless there is some connection between the facts proved and the offense charged, it is improper to admit evidence of one crime to prove another. (People v. Richie, 317 Ill 551; People v. Turner, 260 Ill 84.) The substance of one crime cannot be proved by proving the substance of another. (People v. Allen, 368 Ill 368.) If the trial judge felt that the evidence of the prior transactions on June 27 tended to prove that the six capsules contained heroin, we feel that the evidence was improper for that purpose and was insufficient to sustain a conviction.

There are, however, a number of well recognized exceptions to the general exclusionary rule and the State relies on this corollary principle to sustain the conviction in the instant case. The exceptions have broad application to all kinds of crime including narcotics. See People v. Lewerenz, 24 Ill2d 295, 298, 181 NE2d 99, where the court said:

> In prosecutions for offenses involving narcotics, authorities are in accord that evidence of other offenses is inadmissible unless it comes within one of the recognized exceptions to the general rule, i. e., where it is a part of the res gestae, or where it helps to disclose motive, intent, premeditation, guilty knowledge, malice or a common plan or scheme. (See: 22A CJS, Criminal Law, sec 691(25) and cases there cited.)

In People v. Davis, 14 Ill2d 196, 200, 201, 151 NE2d 308, the court stated that evidence of other offenses

is admissible if it meets "the same test as to relevancy and materiality to the issues as other evidence (citations), and has been deemed properly admissible where it tends to establish the identity of the accused; to show his presence at the scene of the crime when an alibi is interposed; or to prove design, motive, or knowledge *where these matters are in issue.*" (Citations.) (Emphasis supplied.) In Davis the State successfully claimed that identity of the defendant was at issue. The court based its acceptance of the State's contention on the nature of the cross-examination of the complaining witness, wherein defense counsel had sought to elicit the facts that the lighting was poor and that the opportunity to observe defendant at the time of the crime charged was therefore poor also. In the case now before us the State contends merely that "[t]he testimony strengthens the identification by the informer Robert Buonauro and removed any doubt that the defendant was an active participant in the sale." We point out that in the cross-examination of Buonauro there was no attempt by defense counsel to attack Buonauro's identification of defendant. It is true that the objectionable testimony concerning other sales came on direct examination and thus preceded the cross-examination of Buonauro. Significant in this regard, however, is the fact that Officer Demke had testified before Buonauro. Thus Demke had already testified that he knew defendant and had identified him as the man who had engaged in the conversation with Buonauro. And this identification had not been questioned by any cross-examination of that witness.

People v. Lopez, 10 Ill2d 237, 139 NE2d 724, relied on by the State, is also not in point, because there the testimony of prior sales was material to the identification of defendant, a circumstance we find nonexistent here.

The State also refers us to People v. Cole, 29 Ill2d 501, 194 NE2d 269. In Cole a federal narcotics agent

testified that he made controlled purchases from the defendant on two occasions prior to the date of the offense charged. There was additional testimony by another agent corroborating these prior sales. The court found no error, and said at pages 504, 505:

> Considering the stealth with which narcotics transactions are conducted, it is not likely that agent Cook could have merely walked up to defendant, asked for a spoon of heroin, given him $120, gone to the Woods Lounge and had defendant give him the heroin. Yet this, in substance, is what the agent said. This account becomes plausible, however, when it is explained that on July 20 a special employee introduced Cook to defendant. These special employees of the police are generally users of narcotics and persons who know the sellers and are trusted by the sellers. Because of this introduction a sale was allegedly made on July 20, defendant making delivery by leaving the narcotics at a relay mail box. . . . These prior transactions explain and lend credence to the otherwise unrealistic ease with which the Federal agent managed the controlled sale on October 10.

In the instant case, as distinguished from Cole, the plausibility of the transaction presented no problem, since the questionable testimony was given by a man who was neither a federal narcotics agent nor a stranger to defendant, but was, in fact, both a special police employee and a narcotics addict who had known defendant and had seen him every day during the previous three months, and who purchased a small amount of narcotics by comparison with the large purchase in Cole. It is not implausible that a narcotics addict under such circumstances could effect such a purchase. Further, despite the State's argument based on the Cole case, there was no genuine identification issue in this case. As men-

tioned above, Officer Demke had identified defendant prior to Buonauro's testimony and Officer Simpson later identified him in his testimony. In this circumstance, Buonauro's testimony (to which no objection was made) that he had seen defendant every day for three months preceding the sale was more than adequate on the matter of defendant's identification.

Nor did the evidence of other narcotic sales fall within the exception permitting evidence which tends to show design or system. People v. Steele, 22 Ill2d 142, 174 NE2d 848. There was no evidence to demonstrate that these prior offenses were committed in a manner similar to the offense charged; there was no indication in the record that defendant had previously participated in narcotics transactions by referring Buonauro to another seller. To the contrary, it was indicated that the purchases were made direct from defendant. And Buonauro said that prior to the crime charged he had never seen Martin.

The failure to relate any material characteristic or method of the prior transactions to those of the instant crime and the absence of any real issue as to identity, defeat the State's argument of independent relevance, and leave only the highly prejudicial effect of this evidence on the minds of the jurors. When Buonauro testified to his prior narcotics purchases from defendant, it could have been for no purpose other than the improper one of showing defendant's propensity to commit the crime charged.

DECISION

The judgment of the Circuit Court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

DRUCKER, P. J. and McCORMICK, J., concur.