THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY SCHUBERT, Defendant-Appellant.

(No. 74-22;

Second District (1st Division)—May 27, 1975.

Ralph Ruebner and Mary McCormick, both of State Appellate Defender's Office, of Elgin, for appellant.

William E. Sisler, State's Attorney, of Freeport (James W. Jerz, Charles D. Sheehy, Jr., and Martin Moltz, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

In a jury trial the defendant was convicted of burglary, theft of property not exceeding $150 in value and theft of property exceeding $150 in value. He was sentenced to concurrent terms of 2-6 years imprisonment for burglary, and 1 year imprisonment for the theft not exceeding $150. No sentence was imposed for the theft exceeding $150, based upon the trial judge's conclusion that this was an included offense in the burglary charged.

Defendant appeals, contending that he was not proved guilty of the offense of theft not exceeding $150 beyond a reasonable doubt, and asking that this conviction be reversed without remand. He also asks that all convictions be reversed and the cause remanded for a new trial, claiming that the trial court erroneously permitted evidence of other unrelated offenses in the trial. He further contends that the conviction for theft of property exceeding $150 should be vacated because it is an included offense in the burglary conviction.

The charges arose from various incidents alleged to have occurred on February 16, 1973, in Freeport, Illinois.

Rebecca Petta, a long-time friend of the defendant, was the principal witness against him. Together with the defendant and two juveniles, Ronald Richart and Arnold Wilhelms, she was at a garage east of Freeport where the three males were repairing her car. Following the repairs, she drove all of them in her car to Freeport. She said she was directed by the defendant to go into a parking lot at Walnut and Spring Streets at approximately 7:30 P.M., and that there defendant told her that he was going to break into the cars and steal whatever was in them. According to her testimony, the defendant, Richart, and Wilhelms broke into a vehicle described as a brown van, took a tape deck, speakers, tapes and a box which she assumed was tools, and brought them into her car. She claims that she protested but the defendant told her "she was part of it now" and that if she should turn against him he would get her in the end. Defendant then told her to drive to another parking lot which was located behind the Germania Club. While she stayed in the car, the others got out and entered various cars in the lot. They came back and brought back a tool case, jumper cables, a pair of men's boots, and several cans of oil. They then went to the parking lot of the Star Bowl bowling alley where cars were broken into by the defendant and the two juveniles and military uniforms, coveralls, a brief case, a jacket and a radio were placed in the Petta car.

She said that the four then drove to her apartment where the other three removed the stolen goods from the car and placed them in her apartment. Some of these items were removed the following morning, while the remaining items, except for the uniforms which remained in her closet, were removed in a trunk approximately 1 week later by the defendant and the two juveniles to a barn east of town. She said that the uniforms were still kept in the apartment and that a radio was hidden by the defendant somewhere in her house.

The defendant had a key to her apartment and when she returned after being away for some time on a visit she found the apartment in shambles. She called defendant but could not reach him and then called the police to report the vandalism. When they arrived and upon investigation found some of the stolen goods in the apartment, Ms. Petta then told the police the details of the night of February 16.

During the time the police were in the apartment she testified that defendant drove by with a girl companion but drove away upon seeing the police car. The police followed after them. Ms. Petta was then taken to the Freeport Police Station where she gave the police two statements concerning the events of February 16.

She admitted on cross-examination that she did not tell the police about the two juveniles in her first statement because she thought she would be in more trouble. Some 2 hours or more later, however, she gave her second statement implicating them.

The two juveniles testified for the State. Richart said that when they drove to Freeport there was "not too much" conversation. When they came to the first parking lot he and the other juvenile got out of the car and took the items, bringing them back to the car in which the defendant had remained and that defendant did not say anything. At the Star Bowl parking lot where they went next, defendant got out of the car while he and Wilhelms remained in it and defendant broke into a station wagon and placed army clothes, radios and other items into the trunk of the Petta car. The defendant helped carry the contents of the car trunk into the Petta apartment when they returned there.

Wilhelms gave essentially similar testimony except that he said that he did not see the defendant actually break into the car at the Star Bowl lot but that he did see him put some army clothes and some "stuff" into the trunk of the Petta car. He also testified that he and Richart were dropped off and did not transport the items from the car into the Petta apartment.

Neither juvenile mentioned any incidents at the Germania Club parking lot which Rebecca Petta had referred to in her testimony.

Defendant testified in his own behalf. Essentially, he claimed that he had been drinking when they decided to go to Freeport in Petta's car and that the next thing he could remember was that he passed out in the car and did not leave it until he got back at the Petta apartment that night. He remembered seeing "the stuff" being carried into the apartment by the others while he was in a daze, but he said that he did not have any contact with the stolen items at any time except that he was with Petta when she sold some of the items to one of their friends and she kept the proceeds.

Defendant stated, contrary to Petta's testimony, that the night of his arrest she had called him when she returned to her vandalized apartment and he said that he would come over with a girl companion. He stated that upon arriving at the apartment, he saw the police car, became scared and left. It was at this time that the police followed him and finally apprehended him.

To impugn Petta's testimony involving defendant in the crimes, defendant's mother and sister testified that Rebecca had said prior to the February 16 date that if she could not have defendant nobody would.

Defendant argues that only the testimony of Rebecca Petta implicates him in the planning or the commission of the theft of property not ex-

ceeding $150 in value (the stereo equipment and tools alleged to have been taken in the first parking lot), and that her testimony, which he contends is contrary to that of the juveniles, is unbelievable.[1] In particular, defendant notes that she changed her story as to the persons implicated in her first and second statements to the police, that she was the only witness who testified to a theft taking place at the Germania Club parking lot, and also that she was motivated by jealousy.

It is a familiar rule that the testimony of a single credible witness is sufficient to convict even if the defendant contradicts that testimony. (*People v. Morehead* (1970), 45 Ill.2d 326, 329-30. See also *People v. Barker* (1973), 13 Ill.App.3d 349, 353.) It is also a familiar rule that the credibility of witnesses is a question for the jury and its finding of guilt will be disturbed only where the evidence is so unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. *People v. Morehead* (1970) 45 Ill.2d 326, 329; *People v. Hampton* (1969), 44 Ill.2d 41, 45.

•■ Rebecca Petta's testimony was positive, and we cannot say that her story is so incredible or contradictory as to be patently unbelievable. In addition, it should be noted that the testimony of Richart and Wilhelms, while corroborating defendant's contention that he was not an active participant in this particular theft, does not support his testimony as to the reason for his lack of participation. Richart and Wilhelms' testimony does not support defendant's claim that he was "passed out" at the time of the theft of the property from the van. Even if the testimony of Richart and Wilhelms were taken as true and the jury believed that defendant did not leave the Petta car at the time of the theft in the first parking lot, the verdict would still be supported by the evidence on an accountability theory as to which the jury was properly instructed. (See *People v. Kriston* (1973), 12 Ill.App.3d 18, 23; Ill. Rev. Stat. 1973, ch. 38, par. 5—2.) The entire circumstances were sufficient to show defendant's participation in the common plan even if the jury were to believe that there were no express words of agreement between the participants. (See *People v. Jones* (1973), 12 Ill.App.3d 643, 647.) Moreover, the testimony of the juveniles that defendant was the active participant in the subsequent burglary and theft at the Star Bowl parking lot shortly after the incident at the first lot may be weighed in determining whether a common design existed. (See, *e.g., People v. Kolep* (1963), 29 Ill.2d 116, 120; *People v. Washington* (1962), 26 Ill.2d 207, 209.) We conclude that the defendant was proved guilty beyond a reasonable doubt of the offense of theft of property not exceeding $150 in value.

The defendant next contends that the trial court erred in allowing the

---

[1] Defendant does not raise the reasonable doubt issue with reference to the burglary conviction.

State to present evidence of the later vandalism related by Rebecca Petta. Defendant argues that this testimony was not material to an issue in the case and was inadmissible because it was evidence of other crimes allegedly committed by the defendant used for the purpose of demonstrating his propensity to commit crime. For support defendant cites *People v. Baxter* (1966), 74 Ill.App.2d 437.

■■ The testimony in question was elicited by the prosecutor in the context of a description of the manner of the arrest of defendant. Facts and circumstances surrounding an arrest may be proved where they tend to connect the defendant with the perpetration of the offense for which he is being tried. (*People v. King* (1973), 10 Ill.App.3d 847, 852.) And the description of the events surrounding the arrests are admissible even though there is a disclosure of the commission of other crimes. (*People v. Tucker* (1969), 118 Ill.App.2d 136, 141.) Moreover, it should be noted that no effort was made to prove that the defendant was guilty of the vandalism. The inference which might arise from the testimony that the defendant had the key to the apartment, even if erroneously admitted, would not call for reversal under the total circumstances which showed the clear guilt of the defendant. See *People v. Tranowski* (1960), 20 Ill.2d 11, 17; *People v. Allen* (1971), 1 Ill.App.3d 197, 202.

Similarly, Rebecca Petta's reference in her testimony to the fact that she was upset (after she had called defendant and he had told her that he would be coming out to talk to her) because she knew "that Gary would be rather violently mad when he found the policeman there"; and her further answer on redirect (after the defense had questioned her about her nervousness) that she was nervous because she knew "that Gary would probably come out there and beat me up. He's done it before," even if error is not of the magnitude to warrant a reversal and remand for a new trial when the whole record is considered.

■■ Defendant's final contention that his conviction of theft of property exceeding $150 in value should be vacated even though he was not sentenced for that crime is confessed by the State and we also agree that that conviction should be vacated since it was a lesser offense arising from the single act for which defendant was convicted and sentenced for burglary. See *People v. Lilly* (1974), 56 Ill.2d 493, 496.

The convictions for the separate offenses of burglary and of theft of property not exceeding $150 in value and the sentences imposed thereon are affirmed. The conviction of the offense of theft exceeding $150 in value is vacated.

Affirmed in part; vacated in part.

GUILD and HALLETT, JJ., concur.