THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GORDON GOODMAN, Defendant-Appellant.

Fifth District   No. 78-526

Opinion filed August 9, 1979.

G. MORAN, J., dissenting.

Ronald L. Pallman, of East St. Louis, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Following a joint trial before a jury in the Circuit Court of St. Clair County, defendant and his co-defendant, Michael Bury, were convicted of delivering more than 30 grams of a substance containing cocaine in violation of section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(a)(2)). On appeal, defendant argues that the trial court erred in denying his motion for a separate trial; that his motion *in limine* requesting suppression of evidence of cocaine seized from him following his arrest should have been granted; that the evidence failed to prove him guilty beyond a reasonable doubt; and that the State's Attorney's closing argument was prejudicial.

The evidence showed that co-defendant Bury had sold cocaine to an undercover agent of the Division of Investigation, Department of Law Enforcement. According to the agent's testimony, Bury conditioned the sale on his ability to obtain narcotics and consent from his "contact." During negotiations, Bury referred to his contact as a man living in a trailer in Okawville who had voluntarily terminated his telephone service out of fear of being "bugged" and who was involved in the drug business. Defendant's name was never mentioned.

The case against defendant was premised on his accountability for the offense and was based largely on circumstantial evidence. On the day of the transaction, Bury and the agent agreed to meet in a restaurant in St. Clair County. The agent arrived at 7 p.m. Two other undercover officers sat at a neighboring table approximately three to four feet away. Additional agents were stationed in unmarked cars in the restaurant's parking lot. The officers observed defendant drive into the parking lot and wait in his car until Bury and a third person arrived in a separate vehicle. Defendant, Bury, and their companion entered the restaurant

together and sat down at the agent's table. Defendant sat directly across from the agent but was never introduced to him and did not speak to him. Bury sat to the agent's immediate left.

After some casual conversation, Bury and the agent left the restaurant to confer about the delivery. The agent suggested that the cocaine's purity be tested before the sale was consummated and offered to drive Bury to meet one of the agent's friends who could analyze it. Bury stated that he could not leave the premises because "my man would freak if I left with his cocaine." The agent then gave Bury 10 marked $100 bills as security and showed him the balance of the agreed upon purchase price. Bury offered to go back into the restaurant to see whether he could make satisfactory arrangements.

The surveilling agents indoors testified that they observed Bury come back to defendant's table and converse with him for three to four minutes. The agents testified that although they could not hear the entire discussion, they heard Bury inform defendant that he was going with the buyer to get more money and would be back shortly. The agents saw Bury lay some money on the table and slide it toward defendant. They saw defendant cover the money with his palm, slide it off the table and put it into his pants pocket, nodding his head affirmatively. After defendant nodded, Bury left the restaurant and went back to the agent's car. The agent drove to a State police office in St. Clair County where Bury was arrested and the cocaine was seized.

After approximately 20 minutes elapsed without Bury's return, defendant and the third man paid their bill and left the restaurant. Defendant was arrested in the parking lot and taken to State police headquarters. A search of defendant at headquarters uncovered the marked money that had been given to Bury and a plastic bag containing some cocaine and a rolled dollar bill.

Neither defendant nor Bury made any written statement to the police. At trial, defendant testified in his own behalf. Bury did not testify and no further defense evidence was produced.

As grounds for severance, defendant argues that Bury's statements to the agent concerning his contact and his place of residence, admitted in evidence, prejudiced him before the jury and that Bury's defense conflicted with his own. The agent's testimony contained some of Bury's references to a "contact" but did not identify defendant by name or conclude that defendant was the person to whom Bury referred. The court admonished the jury that Bury's statements were not admissible against defendant and instructed them in accordance with Illinois Pattern Instruction, Criminal, No. 3.05 (1968), that "any evidence which was limited to one defendant should not be considered by you as to any other defendant."

The statements of Bury made to the agent about his contact and place of residence inferentially implicated Goodman and could be considered hearsay as to defendant. Bury did not testify and was, therefore, not subject to cross-examination by Goodman. Defendant argues that the rule of *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, governs and that defendant was denied his constitutional right of confrontation. *Bruton*, however, applies only to the confession or statement of a co-defendant implicating another defendant. In *Bruton* the court was careful to point out that it was not dealing with other recognized exceptions to the hearsay rule. 391 U.S. 123, 128 n.3, 20 L. Ed. 2d 476, 480 n.3, 88 S. Ct. 1620, 1623 n.3.

■■ We agree with the State that Bury's references to his "contact" were admissible against defendant under the well recognized rule that admissions of a coconspirator in furtherance of the conspiracy may be used as proof against other conspirators. (See generally 4 Wigmore, Evidence §1079 (Chadbourn rev. 1972).) We believe the court should not have limited the jury's consideration of Bury's admissions.

■■ Before such statements are admissible, however, the evidence must establish a *prima facie* case of conspiracy independent of the hearsay evidence. (*People v. Jackson* (1977), 49 Ill. App. 3d 1018, 364 N.E.2d 975.) This is largely a matter of order of proof, however. The transaction between Bury and Goodman in the restaurant involving the money and the conversation overheard by the agents was ample proof to make out a *prima facie* case. Other circumstantial evidence tended to prove that defendant was Bury's contact. He lived near Okawville and once had his telephone removed over fear of eavesdropping.

■■ Bury and Goodman were not charged with the offense of conspiracy; however, it is established that it is not necessary that conspiracy be charged in the indictment or information. (*People v. Thomas* (1976), 38 Ill. App. 3d 689, 348 N.E.2d 285.) As to the first basis of defendant's motion for severance, prejudice because of Bury's statements, we believe the motion ill-founded as Bury's statements were properly admissible against Goodman.

The second reason advanced in support of defendant's motion for separate trials was that Bury's defense would conflict with defendant's. Bury, however, advanced no defense; there was no conflict. Goodman's defense was to disassociate himself from Bury's activities. (*People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 96.) The mere apprehension or suggestion of conflicting defenses is insufficient to warrant separate trials. (*People v. Miner* (1977), 46 Ill. App. 3d 273, 360 N.E.2d 1141.) In short, the record demonstrates that there was no antagonist defense, and the denial of a severance by the trial court was not an abuse of discretion.

■■ Defendant argues that reversible error was committed by the

admission of evidence that he possessed a small quantity of cocaine when arrested. While it is often said that evidence of other crimes committed by the defendant are inadmissible at an unrelated trial, perhaps a more accurate statement is that such evidence is properly admitted if relevant for any purpose other than to show a general propensity of the defendant to commit a crime. Thus evidence of related offenses is competent to prove design, motive, intent or knowledge when the mental state of the accused is an issue at trial. (*People v. Brown* (1962), 26 Ill. 2d 308, 186 N.E.2d 321; *People v. Lewerenz* (1962), 24 Ill. 2d 295, 181 N.E.2d 99; 2 Wigmore, Evidence §300 *et seq.* (3d ed. 1940).) Goodman denied any knowledge of the delivery of the cocaine, knowledge being the requisite mental state accompanying the act defining the offense. He testified that he took the ten $100 bills and placed them in his pocket without any knowledge of Bury's activities. At defendant's request the court instructed the jury that evidence of defendant's possession of cocaine was admitted solely on the issue of defendant's knowledge and was to be considered by them for that limited purpose only.

■■ Defendant argues that evidence of possession has no relevance to defendant's knowledge of the delivery of a large quantity of cocaine, a Class X felony (Ill. Rev. Stat. 1978 Supp., ch. 56½, par. 1401(a)(2)), and cites in support of this argument *People v. Baxter* (1966), 74 Ill. App. 2d 437, 221 N.E.2d 16. However, in *Baxter*, the court held it was improper to admit evidence of unrelated sales of narcotics where design, motive or guilty knowledge were not in issue. Defendant's knowledge of the sale of cocaine was in issue. We believe his possession of cocaine was relevant to his knowledge and participation of the sale of cocaine by his confederate. *People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46.

Furthermore, the circumstances surrounding an arrest are admissible where they connect the defendant to the offense charged, even though they may reveal the commission of another crime. *People v. Schubert* (1975), 28 Ill. App. 3d 599, 329 N.E.2d 23; *People v. Tucker* (1969), 118 Ill. App. 2d 136, 255 N.E.2d 31.

■■ Defendant next argues that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt. We have recounted the facts as developed at trial and believe it is apparent that the defendant was proved guilty of the offense charged. There was both direct and circumstantial evidence of defendant's guilt. Circumstantial evidence is sufficient standing alone to support a conviction. (*People v. Mourning* (1975), 27 Ill. App. 3d 414, 327 N.E.2d 279.) The jury was properly instructed on the law of accountability and could reasonably conclude that defendant's presence at the restaurant was more than mere coincidence; that he was the "contact" to whom Bury referred and not an innocent bystander; and that he was an active party in the planning and

commission of the crime. *Cf. People v. Marquis* (1974), 24 Ill. App. 3d 653, 321 N.E.2d 480.

Lastly, defendant complains that the State's closing argument was improper in three instances. No objection was made to any part of the argument nor was the allegedly improper argument set out in the post-trial motion. In any event, we have examined the argument complained of and do not find it objectionable.

The judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

I believe the majority opinion conflicts with the decision of our supreme court in *People v. Smith* (1967), 38 Ill. 2d 13, 230 N.E.2d 188, and the decisions of the United States Supreme Court in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1602, and *Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065.

In a case remarkably similar to the present one, the United States Court of Appeals for the Ninth Circuit specifically held *Bruton* applicable in a conspiracy situation. In *United States v. Sanchez* (9th Cir. 1966), 532 F.2d 155, three persons were indicted for conspiracy to possess with intent to distribute opium and heroin. One of the defendants pleaded guilty and the other two went on to trial. One co-defendant did not take the stand, but asserted a defense of entrapment. His attorney advised the jury that had he testified, he would have admitted the allegations in the indictment. The court stated that the incriminatory admissions of the one co-defendant were extremely damaging to the appealing defendant and impaired his right to a fair trial. The entrapment instruction contained no protective language restricting the admissions to the nontestifying defendant, nor was any objection or request made to include such by the appealing defendant. Nevertheless, relying on *Bruton*, the court implied that a limiting instruction under the circumstances would not have cured the constitutional defect. The major factor in the court's decision was the fact that the case against the appealing defendant was extremely slender and therefore the use of the statements against him was manifest injustice resulting in plain error. In comparison to this case, it should be noted that the trial judge himself admitted on the record that the case against Goodman was very weak.

However, assuming that the statement of a co-conspirator is an exception to the rule laid down in *Bruton*, I still disagree with the majority

because no conspiracy was ever proved between defendant Goodman and defendant Bury, independent of Bury's hearsay statements.

Conspiracy is generally defined as an agreement, tacit or express, to accomplish either an unlawful purpose or a lawful purpose by unlawful means. The essence of the offense is a concern of will and endeavor between two or more people. (*People v. Bain* (1934), 358 Ill. 177, 193 N.E. 137.) When this record is viewed without consideration of Bury's statements, there is no evidence that any such agreement existed between the defendant and Bury.

Agent Inlow met Bury in a public restaurant. Bury was accompanied by defendant and a second man, in whose presence he stated that he had cocaine. Defendant was not a party to any discussion between Inlow and Bury at this meeting or at any other time, and no evidence was presented showing that any conversation between defendant and Bury which specifically referred to the cocaine ever occurred. The actual exchange of drugs and money occurred out of defendant's presence. Bury subsequently gave defendant a large sum of money in a public place. The most incriminating conclusion that can be drawn from this sequence of events is that defendant had knowledge of and acquiesced to the illegal transaction. This certainly does not constitute participation in a conspiracy. The only agreement shown in this case was the agreement between Inlow and Bury for the transfer of the cocaine, which agreement began when Inlow contacted Bury to attempt a purchase and Bury agreed to arrange a sale.

The majority opinion rests its finding of a conspiracy between Goodman and Bury on two grounds. The first of these is circumstantial evidence which indicated that Goodman was the contact. This evidence consisted of the facts that Goodman lived near Okawville and once had his telephone disconnected. These facts standing alone are irrelevant—they have significance only when tied to the hearsay statements of Bury that his contact lived in Okawville and once had his telephone removed for fear of eavesdropping. How can it be said that these facts *independently* help to establish the existence of a conspiracy? Second, the majority relies on the money transaction and overheard conversation between Bury and Goodman in the restaurant to establish a prima facie case of conspiracy. As stated above, the most that can be said of this is that Goodman knew of and acquiesced to Bury's illegal dealings. Where is the evidence of any agreement to further Bury's criminal intent? The fact that a party commits illegal acts that further the object of a conspiracy does not make him a conspirator unless he had knowledge of the conspiracy. (16 Am. Jur. 2d *Conspiracy* §10 (1964).) Taking the money, therefore, is not sufficient in itself.

The circumstantial evidence used to establish a conspiracy must afford a reasonable inference as to the ultimate facts to be proved and must not be based on mere speculation or suspicion. (16 Am. Jur. 2d *Conspiracy* §36 (1964).) A conspiracy cannot be established by evidence of a mere relationship or transaction between the parties. (*People v. Persinger* (1977), 49 Ill. App. 3d 116, 363 N.E.2d 897.) Demonstrating knowledge is not enough; it is the finding of intent and agreement that makes a conspiracy. (*People v. Persinger.*) In *Persinger* the circumstantial evidence used to inferentially establish an agreement to unlawfully deliver a controlled substance was much stronger than in this case. There was cumulative evidence as to the quantity, frequency and duration of sales to the State's key witness over the period of a year and of the defendant's presence at numerous drug sales, although he never made any of them directly. In addition, ōn one occasion he actively facilitated the transaction by lending his pocket knife to the seller to scrape off a prescription label. In comparison to this case, the State's key witness had never seen Goodman before, Goodman was not present nor did he actively participate in the actual exchange, and there were no prior dealings between Bury and the agent which could have linked Goodman to them. The circumstantial evidence as a whole just does not reach the level it did in *Persinger* and really amounts to nothing more than suspicion.

If it can be said that there was any conspiracy at all betwen Bury and Goodman, it must be viewed as commencing with the conversation between them in the restaurant whereby Bury told Goodman that he was going with the buyer to get more money. This could possibly be viewed as putting Goodman on notice of the pre-existing conspiracy between Inlow, Bury and conceivably Malec and constituting a tacit agreement to join. However, it is standard hornbook law that declarations or acts of one conspirator made prior to the beginning of the conspiracy are not admissible against other members of the conspiracy. (16 Am. Jur. 2d *Conspiracy* §39 (1964).) In other words, subsequent membership in a conspiracy renders the new member criminally liable for the deeds of the conspiracy but does not relate back to impute co-conspirator statements to him on an agency theory. Therefore, Bury's statements regarding the need to verify transactions with his "contact" and the whereabouts of his contact are inadmissible under the conspiracy exception because they were made prior to the formation of the conspiracy between Goodman and himself.

The admission of the hearsay statements into evidence cannot be justified on the basis of the existence of a conspiracy, because the evidence failed to establish one, or if it did, the statements were made prior to its formation.